**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

D.L.S.,

      Plaintiff-Appellant,

    v.

THE STATE OF UTAH; UTAH
COUNTY, a government entity; C.
KAY BRYSON, Utah County
Attorney; AMERICAN FORK CITY, a
municipal corporation, and JAMES
"TUCKER" HANSEN, Prosecutor,
American Fork City,

      Defendants-Appellees.

No. 03-4031

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:02-CV-565 DAK)

---

Brian M. Barnard (James L. Harris, Jr. with him on the briefs), Utah Legal Clinic,
Salt Lake City, Utah, for Plaintiff-Appellant.

Jerrold S. Jensen, Assistant Attorney General (Mark L. Shurtleff, Attorney
General, with him on the brief), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **HENRY** , **BRISCOE** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

Pseudonymous Plaintiff D.L.S. brought a civil rights suit seeking a declaratory judgment that Utah's sodomy statute is unconstitutional. The district court dismissed the suit for lack of standing and ripeness. Plaintiff now appeals that dismissal, and we **AFFIRM** the district court's judgment.

## BACKGROUND

Plaintiff's complaint and affidavit allege the following facts. D.L.S. lives in American Fork, Utah County, Utah. He is an unmarried adult. On various occasions in the recent past, he and an unmarried female have engaged in sexual activity in violation of Utah's sodomy laws.[1] The relevant sex acts were consensual and non-commercial, and took place in private. D.L.S. hopes and expects to continue these practices in the future. However, he fears that his conduct might come to the attention of the government and result in criminal prosecution by Utah County or American Fork City authorities. D.L.S. claims that this fear of prosecution has restrained and inhibited his sexual conduct and limited his ability to pursue intimate relationships.

---

[1]Utah law declares that "[a] person commits sodomy when the actor engages in any sexual act with a person who is 14 years of age or older involving the genitals of one person and mouth or anus of another person, regardless of the sex of either participant." Utah Code Ann. § 76-5-403(1). Consensual sodomy is a class B misdemeanor. *Id*. § 76-5-403(3).

D.L.S. sued the State of Utah, Utah County, county prosecutor C. Kay Bryson, and American Fork city prosecutor James "Tucker" Hansen in federal district court. The lawsuit sought a declaratory judgment that Utah's sodomy statute was unconstitutional and a permanent injunction prohibiting prosecution of D.L.S. for sodomy violations. The suit also asked for $1 in nominal damages and attorney's fees and costs.

The defendants moved to dismiss, arguing that D.L.S. lacked standing and that the case was not ripe. The district court held a hearing on the defendants' motion and issued a written opinion two days later. The court granted the motion and dismissed the case on standing and ripeness grounds. The court reasoned that a plaintiff has standing to challenge a state criminal law only when he can show a real and immediate threat of prosecution, and that D.L.S. failed to make such a showing.

On appeal, D.L.S. contends that he faces a threat of sodomy prosecution that is sufficiently likely to support standing. This credible threat is a sufficient injury, according to D.L.S., because it chills his First Amendment right to express intimate emotions via sodomous acts. These same considerations, in his view, also require a conclusion that the case is ripe.

# DISCUSSION

Article III of the Constitution limits the jurisdiction of the federal courts to particular "cases" or "controversies." The case or controversy requirement helps preserve appropriate separation of powers between the courts and the other branches, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992), and provides courts with "that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (internal quotation marks omitted). To satisfy the standing requirement, a plaintiff must show "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (citation omitted). Under the "injury in fact" prong, the plaintiff's injury must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a "real and immediate threat" of his future prosecution under that statute to satisfy the injury in fact requirement. *Faustin v. City and County of Denver, Colo.*, 268 F.3d 942, 948 (10th Cir. 2001).

We agree with the district court that D.L.S. has failed to show a sufficient likelihood of his future prosecution under the statute to support standing. It is undisputed that D.L.S. has never been charged with sodomy, prosecuted under the statute, or directly threatened with prosecution. Although such direct evidence of a real threat of prosecution is not always necessary for standing, in this case there is additional evidence indicating that prosecution of D.L.S. for sodomy is unlikely. The Utah County prosecutor, defendant Kay Bryson, provided an affidavit in which he states that during his tenure in the Utah County Attorney's Office (1987 to the present), to his knowledge Utah County has not charged anyone with a violation of the challenged sodomy statute. Appellant's App. 29-30. Mr. Bryson further states that it is doubtful that Utah County would bring sodomy charges against D.L.S. for his past or future sexual activities as described in his complaint. The American Fork city prosecutor, defendant James "Tucker" Hansen, states in his affidavit that he has filed only one sodomy prosecution during his 11-year tenure, that he subsequently dismissed that case, and that he will not file charges against D.L.S. for the kind of sexual activity D.L.S. intends to practice. Appellant's App. 31-32.

D.L.S. maintains that these prosecutorial promises provide only cold comfort, because Mr. Hansen did in fact bring a sodomy charge in 2000 against a man for the same sort of private consensual conduct that D.L.S. practices. As the

district court noted, however, that case involved a scenario with significant differences from D.L.S.'s case:

> The Defendant . . . was arrested at his home for possession of a controlled substance, contributing to the delinquency of a minor, unlawful purchase, possession or consumption of alcohol, and sodomy with a minor 16 year-old girl. Police entered the defendant's home pursuant to a search warrant for a rape charge. The sodomy charge was brought because of statements made by the girl about her oral sex with the defendant over the prior 24 hours. The police also found a list from the defendant's home identifying approximately 50 girls and various sex acts the defendant had had with them, including oral sex. The defendant in that case ultimately pleaded guilty to a possession of marijuana charge and the other charges, including the sodomy charge, w[ere] dropped.

Op. 5. The fact that the city brought charges, in the context of a rape investigation, for conduct involving a minor does not support an inference that D.L.S. faces a real and immediate threat of prosecution, especially where the same prosecutor has stated in an affidavit that he will *not* bring charges against D.L.S. for the conduct as he has described it. We have held that assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past. *See Faustin*, 268 F.3d at 948; *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002). It follows that a plaintiff cannot show a real threat of prosecution in the face of assurances of non-prosecution from the government merely by pointing to a single past prosecution of a different person for different conduct.

-6-

Any lingering threat of prosecution that might have survived the prosecutors' affidavits has now been snuffed out by the Supreme Court's recent decision invalidating Texas' sodomy statute as applied to consensual, private sex between adults. *Lawrence v. Texas*, 539 U.S. 558 (2003). Prosecutors who swore that they would not, or were unlikely to, prosecute D.L.S. for private consensual activity before the issuance of *Lawrence* are of course exceedingly unlikely to launch sodomy prosecutions after that decision. *See Doe v. Pryor*, 344 F.3d 1282, 1287 (11th Cir. 2003) (*Lawrence* establishes that plaintiffs face no credible threat of prosecution under Alabama sodomy statute).

In the alternative, D.L.S. argues at considerable length that sodomy is "expressive conduct" protected by the First Amendment and that he has suffered an injury in fact because Utah's sodomy laws have a chilling effect on his desire to exercise his First Amendment rights. Our cases have recognized that an ongoing chilling effect can, in some circumstances, amount to a sufficient injury to support standing. *See Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003). However, mere allegations of a subjective chill are "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The chilling effect, to amount to an injury, must arise from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences

-7-

following from the statute's enforcement. *See Ward*, 321 F.3d at 1267. As previously noted, D.L.S. has not demonstrated the existence of a real threat of prosecution, and he has not indicated any other objective source for the statute's alleged chilling effect. His unsupported claims of a subjective "chill" are therefore insufficient to support standing.

Finally, D.L.S. claims that he has standing under the more lenient standing requirements applicable to cases raising facial challenges on First Amendment overbreadth grounds. *See, e.g., Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992). Although plaintiffs bringing overbreadth challenges are not always required to show that their own First Amendment rights have been violated (as opposed to the rights of third parties), they still must show that they themselves have suffered some cognizable injury from the statute. *See Ward*, 321 F.3d at 1267 ("A plaintiff bringing a facial challenge to a statute on First Amendment grounds, however, must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement."); *Am. Library Ass'n. v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992) (even facial overbreadth challenges require some showing of concrete injury). D.L.S. has not established such an injury. In addition, we have required that plaintiffs asserting standing on an overbreadth theory must show that the statute censors or chills third parties whose speech is more likely to be protected by the First Amendment than the

plaintiff's own speech. *Faustin*, 268 F.3d at 948-49, *citing Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). In *Faustin*, we held that a plaintiff lacks standing under the "overbreadth doctrine" where the plaintiff offers no explanation of how the statute inhibits the speech of third parties, but instead focuses solely on the argument that the statute unconstitutionally inhibits his own speech. *Id*. ("The overbreadth doctrine does not apply where there is no significant difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the plaintiff's own activities."). D.L.S. has similarly focused on the unconstitutionality of the statute as applied to his own conduct and has not demonstrated that the ordinance applies to any third party's conduct that would be more likely to be protected by the First Amendment. D.L.S. therefore has failed to establish standing under First Amendment overbreadth standing requirements.

Our conclusion that D.L.S. lacks standing to challenge Utah's sodomy statute makes it unnecessary to review the district court's conclusion that the case was unripe. The district court's dismissal of the case is, accordingly, **AFFIRMED**.