**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JESSICA PECK,

     Plaintiff - Appellee,

v.

BETH MCCANN, in her official capacity
as the District Attorney of the Second
Judicial District, State of Colorado,

     Defendant - Appellant,

and

MICHELLE BARNES, in her official
capacity as Executive Director of the
Colorado Department of Human Services,

     Defendant.

------------------------------

OFFICE OF THE CHILD
REPRESENTATIVE; DENVER HUMAN
SERVICES; LARIMER COUNTY
HUMAN SERVICES,

     Amici Curiae.

_____

No. 21-1125

_____

JESSICA PECK,

     Plaintiff - Appellee,

v.

No. 21-1127

MICHELLE BARNES, in her official capacity as Executive Director of the Colorado Department of Human Services,

Defendant - Appellant,

and

BETH MCCANN, in her official capacity as the District Attorney of the Second Judicial District, State of Colorado,

Defendant.

------------------------------

OFFICE OF THE CHILD REPRESENTATIVE; DENVER HUMAN SERVICES; LARIMER COUNTY HUMAN SERVICES,

Amici Curiae.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:19-CV-03450-RBJ)**

_____

Bianca E. Miyata, Assistant Solicitor General, Denver, Colorado, and Kendra K. Smith, Hall & Evans LLC, Denver, Colorado (Philip J. Weiser, Attorney General; Anita M. Schutte, Second Assistant Attorney General; Aaron J. Pratt and Leeah B. Lechuga, Assistant Attorneys General, State of Colorado, Department of Law, Denver, Colorado; and Andrew D. Ringel, Hall & Evans LLC, Denver, Colorado, with them on the briefs), for Defendants-Appellants.

Thomas B. Kelley (David A. Lane, with him on the briefs), Killmer, Lane & Newman, LLP, Denver, Colorado, for Plaintiff-Appellee.

Anna Ulrich, Crestone, Colorado filed an Amicus Curiae brief for the Office of the Child Representative, on behalf of Appellants.

Amy J. Packer and Robert A. Wolf, Assistant City Attorneys, Denver, Colorado, filed an Amicus Curiae brief for Denver Human Services, in support of Appellants.

David P. Ayraud, Fort Collins, Colorado, filed an Amicus Curiae brief for Larimer County, on behalf of Appellants.

_____

Before **MATHESON**, **EBEL**, and **PHILLIPS**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Plaintiff-Appellee Jessica Peck is an attorney who represents parents and other family members in child abuse cases in Colorado juvenile courts. She brought this suit against Defendant-Appellants, Colorado Executive Director of Health Services Michelle Barnes and Second Judicial District Attorney Beth McCann, to challenge the constitutionality of § 19-1-307 ("Section 307") of the Colorado Children's Code Records and Information Act ("Children's Code"). Section 307 requires that child abuse records and reports be kept confidential, and has two separate subsections—Section 307(1) and Section 307(4)—that impose penalties upon those who improperly disclose information from child abuse reports.

Ms. Peck alleges that Section 307 violates her First Amendment rights by restricting her disclosures and thereby chilling her speech on these matters. The district court agreed and struck down both of Section 307's penalty provisions. But for the reasons explained herein, we think that Section 307(1) and Section 307(4) have different scopes due to their distinct language and legislative histories. As a result, we find that Ms. Peck may challenge Section 307(4)'s penalty as

3

unconstitutional, but has not properly challenged Section 307(1). We thus REVERSE the district court's order insofar as it invalidated Section 307(1).

Proceeding with Ms. Peck's challenge to Section 307(4), we find that the Article III requirements for our subject matter jurisdiction are met. Because the statute undisputedly imposes a burden on speech, we apply strict scrutiny and conclude that this provision is not narrowly tailored to the state's compelling interest. Accordingly, we hold that Section 307(4) is unconstitutional and AFFIRM the district court's order to the extent that it struck down that provision. In light of these dual conclusions, we also REMAND on the sole question of whether Section 307(4) is severable from the rest of the statute.

## BACKGROUND

Colorado's child protection system is governed by the Children's Code, which was passed in 1975 to "balance the best interests of children and the privacy interests of children and their families with the need to share information among service agencies and schools and the need to protect the safety of schools and the public at large." Colo. Rev. Stat. § 19-1-302. At issue in this case is Section 307 of the Children's Code, which generally requires that "reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports . . . be confidential." Colo. Rev. Stat. § 19-1-307(1)(a). This confidentiality requirement is enforced by two distinct penalties. First is Section 307(1)(c), which states:

> (c) Any person who violates any provision of this subsection (1)

4

> is guilty of a class 2 petty offense and, upon conviction
> thereof, shall be punished by a fine of not more than three
> hundred dollars.

Colo. Rev. Stat. § 19-1-307(1) (2021).  The second penalty is codified at Section 307(4),

and reads:

> (4) Any person who improperly releases or who willfully
> permits or encourages <u>the release of data or information
> contained in the records and reports of child abuse or
> neglect</u> to persons not entitled to access such information
> by this section or by section 19-1-303 commits a class 1
> misdemeanor and shall be punished as provided in section
> 18-1.3-501, C.R.S.

Colo. Rev. Stat. § 19-1-307(4) (2021) (emphasis added).[1]  The statute also lists a

number of individuals and entities that may lawfully access the otherwise-

confidential reports.  Colo. Rev. Stat. § 19-1-307(b).

---

[1] A minor amendment to both Section 307(1) and Section 307(4) took effect on March 1, 2022, after this case was argued.  The Colorado legislature changed the phrase "is guilty of a class 2 petty offense" in Section 307(1)(c) to read "commits a civil infraction," and changed the phrase "class 1 misdemeanor" in Section 307(4) to read "class 2 misdemeanor." S.B. 21-271, 73d Gen. Assembly, 1st Reg. Sess. (Colo. 2021).  The parties did not address the effect of this amendment on Ms. Peck's claims, but we clarify that the changes do not impact the constitutional implications of the statute and do not moot the case.  These changes were made as part of a broader reform reclassifying various criminal offenses in Colorado and adding civil infractions as a new category in accordance with the recommendations of a state sentencing commission. <u>Id.</u>  Because the current provisions continue to impose some penalty on disclosures, with fairly nominal differences in how the penalties are classified, the amendment does not alter the central fact of Ms. Peck's claim that the penalties in Section 307(1) and Section 307(4) prevent her from speaking as she wishes and thus violate her First Amendment rights.  Her claim is not contingent on the severity of either penalty.  Consequently, our ensuing analysis applies the same to the 2021 iteration of the statute as it does to the current iteration.

One function of Section 307 is to fulfill Colorado's obligations under the Child Abuse Prevention and Treatment Act ("CAPTA"), which conditions federal funding for state child protection systems on the state's use of "methods to preserve the confidentiality of all records in order to protect the rights of the child and the child's parents or guardians, including requirements ensuring that reports and records . . . shall only be made available to [specified persons, entities, and agencies]."  42 U.S.C. § 5106a(b)(2)(B)(viii).  Each year, the Colorado Department of Human Services certifies that Section 307's confidentiality requirement is being enforced in order to ensure that the state receives CAPTA funding from the federal government.

Turning from the statutory background to the facts of this case,[2] Ms. Peck is a private attorney who represents family members in investigations of suspected child abuse or neglect in Colorado.  In January 2019, Ms. Peck represented the mother of a three-year-old girl in a dependency and neglect case in Denver Juvenile Court.  While the case was ongoing, Ms. Peck made statements to the Denver weekly newspaper Westword suggesting that Denver Human Services ("DHS") filed the case against her client "without a single shred of evidence, based on one family member standing up for another family member in advance of trial when the accused is still in jail."  App'x Vol. I at 55.  Ms. Peck also provided Westword with an excerpt of a caseworker supervisor's email detailing the concerns DHS had about her client.

---

[2] We rely on the parties' joint statement of stipulated facts, as well as their attached exhibits and declarations.

Ms. Peck further told Westword the date, time, and location of an upcoming hearing in the case.

After the Westword article was published, the Juvenile Court Magistrate presiding over Ms. Peck's case issued an order stating "that Counsel for Respondent Mother . . . may have disclosed information to a non-party in violation of § 19-1-307(1)(a)," and emphasizing that "any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential in accordance with § 19-1-307(1)(a) and § 19-1-303." Id. at 231.  The court took no further action against Ms. Peck, nor was she contacted by any law enforcement authority.  In fact, records dating back to 1966 indicate that Denver's District Attorney has never prosecuted anyone under Section 307, and records dating back to 2010 similarly show zero Section 307 prosecutions by the Denver City Attorney.  Defendant McCann disclaims any policy, custom, or practices of prosecuting violations of Section 307, but Defendants have expressly chosen not to disavow an intent to prosecute Ms. Peck or anyone else under Section 307.

Ms. Peck filed this action in the United States District Court for the District of Colorado on December 9, 2019, and an amended complaint on January 29, 2020, seeking a court order declaring that Section 307 is unconstitutional and enjoining its enforcement.  She initially named several state government defendants, but the district court dismissed all except Ms. Barnes and Ms. McCann in their official capacities.  As Executive Director of the Colorado Department of Human Service, Ms. Barnes "supervises and provides policy direction for Colorado's child welfare

7

system," which provides services such as child protection, risk assessment, and case management.  App'x Vol. I at 222.  As District Attorney for Colorado's Second Judicial District, Ms. McCann is in charge of enforcing Colorado criminal laws—including the offenses under Section 307(1) and Section 307(4)—within the City and County of Denver.

In July 2020, the parties filed a joint stipulation of facts for the district court to rely on for the purposes of summary judgment in July 2020.  Ms. Peck also filed a sworn declaration stating that she desires in the future to rely on the child abuse reports she comes across during her work to call out misconduct by government officials and government employees to the public.  She stated her belief that Section 307 unconstitutionally prohibits such speech, and that she would risk prosecution under the statute by engaging in her desired speech.

Shortly thereafter, Ms. Peck and each Defendant filed cross-motions for summary judgment.  The district court granted Ms. Peck's motion for summary judgment, enjoining enforcement of both Section 307(1)(c) and Section 307(4) and granting reasonable costs to Ms. Peck.  Defendants now appeal that ruling.

**DISCUSSION**

The crux of Ms. Peck's claim is a First Amendment challenge.  But before we can reach its merits, we address threshold legal questions of standing and ripeness, which involve a predicate question of statutory interpretation.  All of these issues, including findings of constitutional fact and conclusions of law, are reviewed de

8

novo.  See Coalition for Secular Gov't v. Williams, 815 F.3d 1267, 1275 (10th Cir. 2016); Sinclair Wyoming Ref. Co. v. United States Env't Prot. Agency, 887 F.3d 986, 990 (10th Cir. 2017); United States v. Supreme Court of N.M., 839 F.3d 888, 898 (10th Cir. 2016); New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1498-99 (10th Cir. 1995).  Additionally, when addressing Ms. Peck's First Amendment claim, we "perform an independent examination of the whole record in order to ensure that the judgment protects the rights of free expression."  Williams, 815 F.3d at 1275 (quotation omitted).

## I.    Article III Jurisdiction

Though we have appellate jurisdiction to review the district court's final order under 28 U.S.C. § 1291, we must assess whether this court or any federal court has subject matter jurisdiction to review Ms. Peck's constitutional challenge to Section 307(4) under Article III of the Constitution.  We turn first to standing, then ripeness, both of which are necessary components of Article III jurisdiction. See Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).

### A. Statutory Interpretation & Standing

We begin by interpreting Section 307's language and scope in order to determine whether Ms. Peck has alleged any injury that would potentially give her standing to challenge the statute.[3]  The only interpretive dispute in this case is

_____

[3] In the next subsection of this opinion, we address the separate question of whether Ms. Peck's alleged injury suffices as an "injury-in-fact" under our standing precedent, see infra Section I.B.  Here, we first address whether Ms. Peck has alleged

9

whether the statute restricts the disclosure of <u>non-identifying</u> information contained in child abuse reports, as well as the disclosure of identifying information.[4]  Ms. Peck has disclaimed any desire to disclose identifying information, meaning that if the statute reaches only those individuals who disclose <u>identifying</u> information, Ms. Peck has not alleged a valid injury and would lack standing to sue because she would be free to disclose non-identifying information, which is her sole stated intent, and the case would end.[5]

The district court concluded that Section 307 generally reached non-identifying <u>and</u> identifying information, thereby allowing Ms. Peck's claim to proceed against both Section 307(1) and Section 307(4).  But the district court—and the parties—read Section 307 as a whole, failing to explain and interpret key differences between the separate penalties in Section 307(1) and Section 307(4).  We analyze each provision individually and find that although Section 307(1) reaches only identifying information, Section 307(4) is broader, punishing the disclosure of both identifying and non-identifying information.  As a result, Ms. Peck lacks

---

any sort of injury under the statute, <u>i.e.</u>, whether the statute reaches her desired speech at all.

[4] No party denies that the statute restricts the disclosure of identifying information. Defendants provide only minimal argument to suggest that Section 307 does not reach non-identifying speech.  Nevertheless, resolving this question is a necessary first step of the case and we analyze it initially.

[5] Ms. Peck has not asserted on appeal that Section 307 is unconstitutionally vague or overbroad, so we confine our analysis to ascertaining what the statute actually prohibits and whether those prohibitions burden Ms. Peck's desired speech.

standing to challenge Section 307(1) because she is not injured by it. She can,

however, proceed with her claim challenging Section 307(4).

### i. Section 307(1)

The first restriction on disclosures of child abuse information is contained in

Section 307(1), which we recite in full for clarity:

> (1)(a) <u>Identifying information</u>—confidential.　Except as otherwise provided in this section and section 19-1-303, <u>reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports</u> shall be confidential and shall not be public information.
>
> (b) Good cause exception.　Disclosure of the name and address of the child and family and other identifying information involved in such reports shall be permitted only when authorized by a court for good cause. . . .
>
> (c) Any person who violates any provision of this subsection (1) is guilty of a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than three hundred dollars.

Colo. Rev. Stat. § 19-1-307(1) (2021) (emphasis added).　The plain text of

Section 307(1)(a) limits its scope to identifying information only, as indicated by the

subheading "[i]dentifying information." <u>Id.</u> Its construction suggests that two types of

disclosures are prohibited: first, disclosures of the "reports of child abuse or neglect"

themselves—that is, the literal documents that comprise a child abuse report—and

second, "the name and address of any child, family, or informant or any other

identifying information contained in such reports." <u>Id.</u> Neither of these categories

address disclosures of exclusively non-identifying information that may be included

in child abuse records.　Disclosures in the first category (the documents themselves)

11

will necessarily reveal identifying information, given that the reports contain all recorded information about the case, while the second category is limited by its own terms to the identifying information contained in a report.

Legislative history and state-court case law support this narrow reading of Section 307(1). Section 307(1) was amended to reflect approximately its current wording in 1977, shortly after Gillies v. Schmidt, 556 P.2d 85 (Colo. App. 1976), was decided. In Gillies, the state appellate court interpreted a 1975 version of Section 307 ("the 1975 Act") to determine whether it violated Colorado's Public Meetings Law. The court held that the 1975 Act covered "the Entire contents" of a child abuse report, so prohibited the disclosure of non-identifying information. Id. at 86. But this reading was based on the 1975 Act's text, which stated in relevant part: "It is unlawful for any person or agency to solicit, encourage disclosure of, or disclose the contents of any record or report made under this article." Colo. Rev. Stat. § 19-10-115 (1975) (emphasis added). The Colorado legislature amended the statute in 1977 and deleted the phrase "the contents of any record or report," so that the statute effectively stated the same rule as Section 307(1) does today. H.B. 1266, 51st Gen. Assemb., 1st Reg. Sess. (Colo. 1977). This amendment thus suggests the legislature's desire to narrow the statute to cover only the reports themselves and identifying information therein, not the "entire contents" of the reports. See City of Colorado Springs v. Powell, 156 P.3d 461, 465 (Colo. 2007) ("[W]e presume that by amending the law the legislature has intended to change it.").

12

Additionally, principles of statutory interpretation favor reading Section 307(1) to reach only identifying disclosures. If a statute being challenged on its face "is readily susceptible to a narrowing construction that would make it constitutional, it will be upheld." Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988) (internal quotations omitted). See also Jennings v. Rodriguez, 138 S. Ct. 830 (2018) (discussing the doctrine of constitutional avoidance). Ms. Peck does not contend that a statute barring disclosure only of identifying information would be unconstitutional, so we read ambiguities in favor of a narrower Section 307(1) in order to preserve the law. Also, we seek to "avoid constructions that would render any words or phrases superfluous." McCoy v. People, 442 P.3d 379, 389 (Colo. 2019). A broader reading of Section 307(1) would render superfluous the phrase "any other identifying information" in Section 307(1)(a), because such information would already be covered by a reading of the word "reports" if that includes the reports' entire contents, as opposed to just the report document itself. Thus, we think Section 307(1), on its own, prohibits and penalizes only the disclosure of identifying information from child abuse reports—meaning it does not inhibit Ms. Peck's stated desire to disclose non-identifying information. Additional inquiry into the "injury-in-fact" standing requirement as to Section 307(1) is therefore unnecessary, as she has pleaded no injury under this provision at all.

### ii.  Section 307(4)

But of course, Section 307(1) is not the only relevant provision here. We also

examine Section 307(4)'s separate ban and criminal penalty on disclosures:

> (4) Any person who improperly releases or who willfully permits or encourages <u>the release of data or information contained in the records and reports of child abuse or neglect to persons not entitled to access such information by this section</u> or by section 19-1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

Colo. Rev. Stat. § 19-1-307(4) (2021) (emphasis added). The plain text of this provision goes further than Section 307(1): it prohibits the disclosure not only of "reports" and "identifying information," as specified in Section 307(1), but also any "data or information contained in the records and reports of child abuse or neglect." <u>Id.</u> This latter category is unambiguously broad, such that it would include <u>non-identifying</u> information contained in those reports.

Ms. Barnes posits that the only reason for the different language in Section 307(4), as compared to Section 307(1), is not a broader scope but a different intent requirement— she argues that Section 307(1)(c)'s penalty applies when someone "inadvertently, or without knowing, discloses information," while Section 307(4)'s harsher penalty applies only when "a person who intentionally, or willfully releases information." Barnes Opening Br. at 12.[6] This is not the only salient distinction between the two provisions,

---

[6] It is not clear to us that "improperly releases" requires a mental state of intentionality, as Ms. Barnes suggests. But we need not decide that issue, because no party has contended that the mental state requirement is itself significant to the statute's constitutionality. Indeed, given that the First Amendment is intended to facilitate the free expression of ideas, its protections generally extend to willful speech as well as accidental speech. <u>See generally</u> <u>Virginia v. Black</u>, 538 U.S. 343, 358, 123 S. Ct. 1536, 1547, 155 L. Ed. 2d 535 (2003) ("The hallmark of the protection of free speech is to allow free trade in ideas—even ideas that the

14

though; the "willfully permits" language is separate from the "data or information"

language, which has nothing to do with the discloser's intent but rather the content of the

disclosure itself.  We think Section 307(4) is not only harsher (by making the act a

misdemeanor, not just a petty offense or civil infraction) on people who intentionally

disclose information; it is also broader, by punishing non-identifying disclosures as well

as identifying disclosures, thereby enabling Ms. Peck's First Amendment challenge to it.

The key distinction between Section 307(1) and Section 307(4) is not in the penalties

imposed but in their substantive terms dictating what conduct is being penalized.[7]

The legislative history reinforces our view.  Section 307(1), in its current form,

was enacted in 1977.  Section 307(4), on the other hand, was not added until 2003 as part

of Colorado House Bill 03-1211, which overhauled the Children's Code.  H.B. 03-1211,

64th Gen. Assembly, Reg. Sess. (Colo. 2003).  The 2003 changes were made in

connection with the legislature's decision to repeal the state's central registry, a system

for "record[ing] perpetrators and victims of child abuse or neglect in order to aid in

investigations and to screen potential employees in child care-related positions."  Id.

The repeal followed reports showing that the registry's data was both incomplete and

inaccurate.  For example, at least 191 people who had been acquitted of child abuse were

still listed on the registry in 2001, and up to forty percent of registered sex offenders who

---

overwhelming majority of people might find distasteful or discomforting." (quotation
marks omitted)).

[7] In any event, Ms. Peck does not base her complaint on the harshness of the respective
penalties; she claims that any government penalty for non-identifying disclosures of
information from child abuse records imposes a burden on her free speech rights that
does not pass constitutional muster.

had committed sex crimes against children had been omitted from the registry.  Id.  And

frequent errors in how individuals were added to the registry made it impossible to match

a person to a registrant conclusively by a simple search.  Id.  In House Bill 03-1211, the

legislature expressed concerns that the registry was failing both to protect children and to

protect registrants' due process rights, and so it expunged the list of names that were on

the registry and repealed all provisions concerning the registry, which were primarily

codified at Colo. Rev. Stat. § 19-3-313.  Id.

Simultaneous to the repeal, the legislature amended other parts of the Children's

Code to create alternative processes for processing and maintaining child abuse records.

See, e.g., Colo. Rev. Stat. § 19-3-313.5.  This is the context of the 2003 amendments to

Section 307.  First, all references to the registry were removed from Section 307, as from

all other parts of the Code.  For instance, Section 307(2)(j) was altered.  Before, it had

said the state department of human services could access child abuse records to

investigate a licensing applicant when the applicant gave "written authorization to the

licensing authority to obtain information contained in reports of child abuse or neglect or

to review the state central registry of child protection."  Colo. Rev. Stat. § 19-1-307(2)(j)

(2002) (emphasis added).  The 2003 House Bill changed it to require the applicant's

"written authorization to the licensing authority to obtain information contained in

records or reports of child abuse or neglect."  Colo. Rev. Stat. § 19-1-307(2)(j) (emphasis

added).

But Section 307(4) is the only subpart that was added wholesale to Section 307—

it simply did not exist prior to the 2003 amendments.  The legislature provided no

16

specific explanation for why it was added.  We note, however, that the provision is nearly identical to Colo. Rev. Stat. § 19-3-313(10) (2002), which was deleted as part of the repeal and had stated that

> Any person who willfully permits or who encourages the release of data or information contained in the central registry to persons not permitted access to such information by this part 3 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.

The only difference in Section 307(4) is that "central registry" was replaced with "records and reports of child abuse or neglect," and "this part 3" was changed to "this section."

From this background, we can infer that Section 307(4)'s purpose was to maintain the confidentiality requirements that § 19-3-313(10) had previously imposed on the registry—covering all "data or information" contained therein—as to all child abuse records, especially in light of legislators' concerns that the registry was not protecting the due process rights of the accused in child abuse cases.  It therefore makes sense that Section 307(4) would reach disclosures of <u>any</u> information, not merely identifying information, unlike the existing Section 307(1).  <u>See also</u> <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Thus, we hold that Section 307(4) means what it says: disclosure of "data or information in the records and reports of child abuse or neglect" to anyone not listed as exempt in Section 307(2) is a crime, regardless of whether the information is identifying

17

or non-identifying. As a result, Ms. Peck can challenge Section 307(4)'s prohibition on disclosing non-identifying information as an unconstitutional restriction on her desired speech. But Section 307(1) is still best interpreted to reach only disclosures of identifying information. Thus, Ms. Peck has alleged an injury under only Section 307(4), and we proceed by analyzing her challenge to that sole provision.

### B. Injury-in-Fact

Standing is a prerequisite to a federal court's exercise of Article III jurisdiction, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). The burden is on the plaintiff to establish Article III standing by showing (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) that the injury is "fairly . . .trace[able] to the challenged action of the defendant," and (3) that the injury is likely to be "redressed by a favorable decision" of the court. Id. at 560–61. Here, only the injury-in-fact requirement is at issue, as the statute's alleged violation of Ms. Peck's First Amendment rights is undisputedly traceable to the statute itself and could be redressed by this Court's invalidation of the law.

The central problem for Ms. Peck is that she has not yet been subject to Section 307(4)'s penalty, nor has any enforcement authority explicitly threatened to charge her under the statute.[8] But the First Amendment context creates unique

---

[8] At the same time, neither Ms. Barnes, Ms. McCann, nor any other authority has promised not to enforce the law against Ms. Peck should she violate its terms.

interests that lead us to apply the standing requirements somewhat more leniently, facilitating pre-enforcement suits.  See Ward v. Utah, 321 F.3d 1263, 1267 (10th Cir. 2003).  Specifically, a plaintiff bringing a First Amendment claim can show standing by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder," or by alleging "a credible threat of future prosecution" plus an "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights."  Id. (quoting Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir.1997), and Wilson v. Stocker, 819 F.2d 943, 946 (10th Cir. 1987)).[9]

Here, Ms. Peck's claimed injury is that she is "chilled from criticizing official conduct based on information contained in child abuse records and reports as a result of the criminal prohibitions of § 307 and the State's commitment to enforcing them." Aple. Br. at 22.  To determine whether Ms. Peck has adequately alleged a "chilling effect" that establishes an injury in fact, we apply the test pronounced by this Court in Initiative & Referendum Institute v. Walker:

> [P]laintiffs in a suit for prospective relief based on a "chilling effect" on speech can satisfy the requirement that their claim of injury be "concrete and particularized" by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to

---

[9] Though these are listed as two distinct tests in Ward, they overlap and the analysis will be similar under either.  See, e.g., D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir. 2004).

do so because of a credible threat that the statute will be enforced.

450 F.3d 1082, 1088–89 (10th Cir. 2006) (en banc).

### i.   Whether Ms. Peck has previously "engaged in the type of speech affected by the challenged government action"

Defendants do not contest that Ms. Peck meets this first requirement of the Walker test due to her previous disclosure of information in a child abuse report to the newspaper Westword, in apparent violation of Section 307(4)'s broad ban. This prong is therefore satisfied.

### ii.   Whether Ms. Peck has adequately stated "a present desire, though no specific plans, to engage in" the restricted speech

Ms. Peck has submitted a sworn declaration stating that in her work as an attorney, she frequently encounters child abuse "records and reports showing lapses, neglect, or misconduct on the part of Social Workers, including, false and at times, even fabricated information detrimental to my clients or challenging their parenting skills on improper grounds." App'x Vol. I at 176. She also declared that she has in the past "and desire[s] in the future to make public statements, including through the press, calling out public officials and public employees when they have issued materially false or improper reports concerning my clients," but she believes Section 307 prohibits her from doing so. Id. at 176–177. Neither Ms. Barnes nor Ms. McCann have offered factual rebuttals to these claims. Facially, then, Ms. Peck's declaration suffices to state a present desire to engage in the speech prohibited by

20

Section 307(4)—that is, a present desire to publicly disclose information from child abuse reports that must be kept confidential under Section 307(4), as we have read it.

Ms. Barnes argues that Ms. Peck cannot meet this element because Ms. Peck's stated desire to engage in such speech is not "immediate and unconditional." Barnes Opening Br. at 25. She emphasizes that Ms. Peck has not "file[d] suit with a specific employee, official, action, or statement in mind," has not shown "that she is in possession of information showing misconduct of a public official or employee on which she presently desires to speak," has not "explained how the statutory exceptions for addressing any such misconduct are inadequate," and has not guaranteed that her clients will consent to the disclosure of the information. Id. at 27.

But Ms. Barnes' vision of the "present desire" test is too strict, in light of our precedent and the rationale behind a relaxed standing test for chilled speech in the First Amendment context. Ms. Barnes extrapolates her stringent "immediate and unconditional" standard from Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014); Holder v. Humanitarian Law Project, 561 U.S. 1 (2010); and Aptive Environmental, LLC v. Town of Castle Rock, 959 F.3d 961 (10th Cir. 2020). In each case, the court found the injury-in-fact requirement of standing met because the plaintiffs had stated with certainty that they wished to engage in the proscribed speech and definitively planned do so upon lifting of the government restriction. See Driehaus, 573 U.S. at 161 (finding that plaintiffs had adequately "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest" simply by "plead[ing] specific statements they intend to make in future election

21

cycles"); Humanitarian Law Project, 561 U.S. at 15–16 (finding standing where plaintiffs showed that they had engaged in the proscribed charitable support before and stated "that they would provide similar support again if the statute's allegedly unconstitutional bar were lifted"); Aptive, 959 F.3d at 975 (finding present desire prong met where plaintiff showed its desire to solicit during the proscribed hours because their salespeople were more profitable during those hours).  But those cases did not hold that immediacy and unconditionality were necessary to demonstrate an intention to engage in the speech at issue; the plaintiffs' plans were merely sufficient in light of the particular facts of each case.  Furthermore, neither Driehaus nor Humanitarian Law Project were using the "present desire" test we apply in this circuit, and the Supreme Court's analysis of the issue in each case was brief.

Only Aptive was applying Walker's language at issue here, and the facts were quite different from Ms. Peck's situation.  The restricted speech in Aptive was in the form of commercial door-to-door solicitation—something much more easily planned in advance than speech about a caseworker's conduct in a child abuse case.  959 F.3d at 966.  Cf. Rio Grande Found. v. City of Santa Fe, 7 F.4th 956, 959 (10th Cir. 2021), cert. denied sub nom., 142 S. Ct. 1670 (2022) ("All three prongs of the Walker test center on the circumstances of the particular plaintiff before the court.").  Plus, we do not think Aptive's fact-specific discussion of the "present desire" prong translates to a broad rule requiring the plaintiff to state an "immediate and unconditional" desire to speak in the restricted manner.

22

To the contrary, we have previously found the "present desire" prong met where the plaintiff had not established the specific content and likely timing of their desired speech.  In Walker itself, we found the requirement satisfied even though the plaintiffs had not pleaded "any certainty about their intentions" to bring a ballot initiative in Utah that was affected by the challenged statute; it was enough that the Court could "reasonably infer, based on [plaintiff's prior] pattern of bringing wildlife initiatives in Western states including three of Utah's neighbors, a present desire to bring similar initiatives in Utah."  450 F.3d 1082, 1091.  Indeed, we explicitly held that First Amendment plaintiffs generally need not state that they "have specific plans to engage in XYZ speech next Tuesday" in order to show standing.  Id. at 1089.

Similarly, in Rio Grande Foundation, the plaintiff advocacy group merely presented an affidavit from its president stating a general "desire to continue speaking about municipal ballot measures in the future" as support for its challenge to a law requiring disclosures about campaign expenditures.  7 F.4th at 960.  We held that this affidavit was sufficient, even though it did not specify a particular upcoming ballot measure that it would speak about or what it wished to say about such a measure.  Id. ("Nothing more concrete than this general aspiration is needed to meet [Walker's] second prong.").  Ms. Peck's declaration here is not meaningfully different from the plaintiffs' showings in Walker or in Rio Grande Foundation.

We thus decline to require categorically that Ms. Peck and other First Amendment plaintiffs know exactly what they would say and when they want to say it in order to challenge a speech-restrictive law.  Such a barrier would be so daunting

23

as to obviate the leniency we generally apply to First Amendment standing inquiries.

Ms. Peck's sworn declaration clarified the type of speech she wishes to engage in:

non-identifying statements "calling out public officials and public employees when

they have issued materially false or improper reports concerning her clients." App'x

Vol. I at 176–177. Ms. Peck also indicated that she would likely be in a position to

make such statements in the future. Id. at 180. Viewed in tandem with her apparent

prior violation of the statute, this declaration suffices to state a "present desire,

though no specific plans" to engage in speech that is restricted by Section 307(4).

### iii. Whether there is "a credible threat that the statute will be enforced"

To meet the requirement of showing a "credible threat" of Section 307(4)

being enforced against her, Ms. Peck must demonstrate "an objectively justified fear

of real consequences." Winsness v. Yocom, 433 F.3d 727, 732 (10th Cir. 2006).

This Court has identified

> at least three factors to be used in determining a credible
> fear of prosecution: (1) whether the plaintiff showed 'past
> enforcement against the same conduct'; (2) whether
> authority to initiate charges was 'not limited to a prosecutor
> or an agency' and, instead, 'any person' could file a
> complaint against the plaintiffs; and (3) whether the state
> disavowed future enforcement.

303 Creative LLC v. Elenis, 6 F.4th 1160, 1174 (10th Cir. 2021) (quoting Driehaus,

573 U.S. at 164–65), cert. granted on other grounds, 142 S. Ct. 1106 (2022). Here,

the second factor weighs against Ms. Peck—only prosecutors can bring charges

24

under Section 307.[10]  But our analysis of the other two factors show that they favor

Ms. Peck, and so we find that she has satisfied this prong of the Walker test as well.

The first factor's application depends on whether the magistrate judge's order

warning Ms. Peck against violating Section 307 following her disclosures to

Westword can be considered an "enforcement" of Section 307.  Ms. Barnes argues

that this order was not "enforcement," given that it stated only that Ms. Peck "may

have" violated Section 307 by speaking to Westword and did not hold any hearing or

impose any sanctions related to the disclosures.  Barnes Opening Br. at 31.  We

disagree.  The order was intended to put Ms. Peck on notice that she would be

violating Section 307 if she spoke in this manner again.  Being scolded by the judge

presiding over a client's case is no small consequence, and we think it qualifies as

"enforcement" in the practical sense of the word.

We do acknowledge the lack of any recorded instances of past prosecutions

under Section 307, which weighs against Ms. Peck.  But this dearth of prosecutions is

counterbalanced by the fact that each year, the Colorado Department of Human

Services certifies to the federal government that it is enforcing Section 307 in order

to obtain CAPTA funding.  The state cannot have it both ways, and so we find the

"past enforcement" factor slightly favors Ms. Peck.

---

[10] We note, however, that any prosecutor in the state of Colorado is empowered to bring charges for a violation of Section 307(4), and Ms. Peck practices in several different Colorado counties.  Even if Ms. McCann and her successors never prosecute Ms. Peck, someone in Jefferson County or Larimer County or other Colorado counties might.

Ms. Peck more clearly prevails on the third factor. Defendants do not disavow an intent to prosecute Ms. Peck. Indeed, they could not do so, because they assert that certifying enforcement of Section 307 is essential to their access to federal funding under CAPTA. While an assurance of non-enforcement "is not necessary to defeat standing," Ward, 321 F.3d at 1268, a refusal to provide such an assurance undercuts Defendants' argument that Ms. Peck's perception of a threat of prosecution is not objectively justifiable.

Weighing these factors, we find that Ms. Peck has satisfied the "credible threat" prong. Circuit and Supreme Court precedent tells us that this is not supposed to be a difficult bar for plaintiffs to clear in the First Amendment pre-enforcement context. See Wilson, 819 F.2d at 946–47 ("[T]he Supreme Court has often found a case or controversy between a plaintiff challenging the constitutionality of a statute and an enforcement official who has made no attempt to prosecute the plaintiff under the law at issue."); Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); Mangual v. Rotger-Sabat, 317 F.3d 45, 57 (1st Cir. 2003) ("As to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low. . . . The Supreme Court has often found standing to challenge criminal statutes on First Amendment grounds even when those statutes have never been enforced.").

Furthermore, we think the state's staunch refusal to disavow prosecution has heavy weight in this particular case.  Section 307(4) enables Colorado prosecutors to bring criminal charges against those who disclose even non-identifying information from child abuse reports, and Ms. Peck's prior disclosure to Westword falls in such a category.  There is nothing, not even their word, to prevent Ms. McCann or another prosecutor from bringing charges against Ms. Peck for similar statements in the future.  This possibility makes Ms. Peck's fear of consequences for disclosures of information in violation of Section 307(4) objectively justifiable.

Accordingly, we conclude that Ms. Peck has met the Walker test, establishing the injury-in-fact necessary for her to have Article III standing to challenge Section 307(4)'s constitutionality.

### C. Ripeness

A case must also be ripe for this Court to exercise Article III jurisdiction over it.  Walker, 450 F.3d at 1097.  "Standing and ripeness are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention."  Id. (internal quotations omitted).  But unlike standing, ripeness issues focus "not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention."  Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir. 2004) (quotation omitted).  Ms. Barnes would apply that principle here to require Ms. Peck to have the information she wishes to disclose in hand before she is able to file a ripe lawsuit.  We do not agree with Ms. Barnes.

27

The two central factors in ripeness inquiries are "the fitness of the issue for judicial resolution" and "the hardship to the parties of withholding judicial consideration." Sierra Club v. Yeutter, 911 F.2d 1405, 1415 (10th Cir. 1990) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967)). The test is not "rigid or mechanical," but instead "flexible and often context-specific." Id. at 1417. And as with standing inquiries, ripeness inquiries are "relax[ed]" in the context of facial challenges on First Amendment grounds due to "the chilling effect that potentially unconstitutional burdens on free speech may occasion." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1500 (10th Cir. 1995).

In assessing hardship, we typically "focus on whether the challenged action creates a direct and immediate dilemma for the parties." Id. at 1499 (quotations and alterations omitted). Ms. Peck has not identified specific, current confidential information that she would like to disclose right this moment, so in the most literal sense, she does not face a direct and immediate dilemma. But the speech context again complicates our analysis of this factor. Our ripeness inquiries in First Amendment cases often focus on the credibility of the threat of prosecution as an indicator of hardship, as the specter of prosecution can be a hardship in itself because it can chill future speech. See, e.g., id. at 1501. For the reasons described in our standing analysis, we find a credible threat of prosecution here, which imposes a hardship on Ms. Peck in the form of anxiety over and avoidance of her desired speech. See App'x Vol. I at 181 (declaring that Ms. Peck is "not willing to disrespect

28

the rule of law nor to risk" prosecution, so she will not make such restricted statements in the future).

Additionally, the next time Ms. Peck wants to speak on these subjects, she would likely not have time to bring an analogous suit asserting her First Amendment rights because child protection proceedings move quickly. She has shown facts demonstrating a likelihood that her desire to speak in this manner will arise in the near future. Thus, Ms. Peck is likely to confront a scenario where she has to choose between either following the law under Section 307 and forgoing prohibited speech, or representing her clients and holding public officials accountable to the best of her abilities moving forward by making her desired disclosures. This is a dilemma directly caused by Section 307(4) and has the potential to occur imminently, at a speed preventing her from seeking relief in a later suit. Ms. Peck's free speech is indisputably chilled by Section 307(4), as we discussed at length within our standing inquiry. These facts indicate ripeness. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1500 (treating "chilling effect" as a separate ripeness factor for First Amendment plaintiffs).

As for the second factor, this facial constitutional challenge is a purely legal question, accompanied by a joint statement of stipulated facts. It is thus an ideal fit for judicial review, favoring a conclusion that the case is ripe.

In sum, the two factors reflect ripeness and our case law encourages particular lenience in First Amendment ripeness inquiries. See id. at 1499 ("Reasonable predictability of enforcement or threats of enforcement, without more, [are]

29

sometimes . . . enough to ripen a claim."); Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir. 2012) (finding First Amendment challenge ripe); Walker, 450 F.3d at 1098 (same); U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1208 (10th Cir. 1999) (same). We therefore find Ms. Peck's challenge to Section 307(4) to be ripe.

## II.    Strict Scrutiny

The Supreme Court has held that facially "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). Here, Section 307(4) is a content-based restriction on speech in that it targets and prohibits speech based on its content, that content being information from child abuse reports. As such, it is subject to strict scrutiny.[11]

---

[11] While Ms. Barnes concedes this point, Ms. McCann argues against applying strict scrutiny. Ms. McCann's argument lacks merit, however. She seeks a novel application of the Garcetti/Pickering test, which is used to determine whether a government employee is entitled to First Amendment protection for speech within the scope of employment. Garcetti v. Ceballos, 547 U.S. 410 (2006). One of the test's elements asks "whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. at 418. Ms. McCann suggests that the "public concern" element should be applied to this context to allow restriction of Ms. Peck's speech because Ms. Peck, as an attorney for parents in child abuse proceedings, "is a critical and necessary actor in the judicial system," and so has no greater right to publicly speak on these matters than would a government employee like a social worker. McCann Opening Br. at 31–32. We reject Ms. McCann's invitation to so drastically extend the doctrine. Her argument has no foundation in our First Amendment jurisprudence and it would have disastrous downstream results, depriving every individual who plays a so-called "critical" role in some part of the government of First Amendment rights to some degree, for no reason other than their civil service.

It is undisputed that the state has a compelling interest "in protecting its child-abuse information." Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987). Conceding this, Ms. Peck focuses only on the narrow tailoring requirement, arguing that Defendants have failed to show that "a narrowed prohibition—banning only disclosure of identifying information from child abuse records and reports—would not substantially serve the compelling interest." Aple. Br. at 40. The heavy burden of demonstrating that a content-based restriction is "the least restrictive means among available, effective alternatives" lies with the government. Ashcroft v. Am. C.L. Union, 542 U.S. 656, 665–66 (2004).

Defendants contend that Section 307(4) is narrowly tailored because mandating confidentiality as to all information within child abuse records is the only feasible way to protect the compelling interest in privacy for children and their families, because it is too difficult to draw a "bright line between identifying and nonidentifying pieces of information." Barnes Opening Br. at 55.[12] Defendants argue that removing identifiers from child abuse report disclosures would be extremely difficult due to the case-by-case specificity of such reports. They further suggest that the government's compelling interest is not only to keep reports hidden from the media and public, but also to shield the reports from abusers, who might seek retribution, and from a "child's own community, family members, friends,

---

[12] Ms. McCann adopted in full Ms. Barnes' argument regarding the tailoring issue.

classmates, and neighbors," who might stigmatize the identifiable individuals. Id. at 51–54.

We agree that separating identifying information from non-identifying information would often be a difficult task. But whether the alternative means are "difficult" is not the standard we apply in tailoring inquiries. The touchstone is whether the state has shown that no alternative exists that is both "less restrictive" than the existing law and would effectively achieve the state's compelling interest. Ashcroft, 542 U.S. at 665. We need not draw a "bright line" between identifying and non-identifying information at this point in time, when the central question before us is only whether a law limiting identifying disclosures alone—a law that would be enforced case-by-case—could accomplish the state's compelling interest. Defendants have not presented any actual evidence for their assertion that Ms. Peck's proposed alternative would be ineffectual. In response to the various hypothetical examples listed by the district court in which information from a report would be straightforwardly non-identifying, such as the steps a caseworker took to respond to a report, Defendants merely insist that someone out there could, in theory, still identify the child based on that information. This is not proof; it is merely speculation, which is not enough to meet Defendants' burden under strict scrutiny.

Additionally, Defendants have failed to demonstrate that their understanding of what qualifies as "identifying" information—that is, information that would allow anyone, including friends and family, to identify the individuals involved—is the right definition. It is possible that "identifying information" should be construed to

32

cover only such information that would allow members of the public to figure out the individuals' identities, which would make distinguishing between identifying and non-identifying information much easier.[13]  Defendants have not provided any authority or principles in support of their interpretation, and so they have simply failed to convince us that their definition is correct.  It is their burden to do so for Section 307(4) to survive strict scrutiny

Furthermore, other sections of the Children's Code directly contemplate the possibility of public disclosures of information from child abuse reports that do not identify individuals.  Section 19-3-308 provides for the creation of Child Protection Teams, which are directed to "publicly review the responses of public and private agencies to each reported incident of child abuse or neglect" and "<u>publicly report nonidentifying information</u> relating to any inadequate responses."  Colo. Rev. Stat. § 19-3-308(6)(f) (emphasis added).  If Child Protection Teams are capable of distinguishing between identifying and non-identifying information, then so too are courts and prosecutors tasked with enforcing confidentiality requirements.

Defendants argue that the Child Protection Team provision is not inconsistent with their claim because § 19-3-308 requires that the Child Protection Teams publicly disclose information only "after a thoughtful dialogue and determination regarding what details of a case may be identifying," which does not endanger the state's interest in the same way that unilateral disclosure "by an individual or

---

[13] We do not express an opinion on which definition of "identifying" is the correct one, as this would require a detailed exercise of statutory interpretation.

advocate with a subjective agenda" would. Barnes Opening Br. at 58. But that is again Defendants' subjective, unproven understanding of § 19-3-308. The statute itself does not include procedural safeguards to guarantee such a "thoughtful dialogue," and Child Protection Teams include members of the lay community who are no less likely to have an agenda than someone like Ms. Peck. At bottom, the allowance of disclosures of non-identifying information by Child Protection Teams necessarily implies that it is possible to distinguish between identifying and non-identifying information, rebutting the central argument proffered by Ms. Barnes against Ms. Peck's less-restrictive alternative.

Section 307's enumerated exceptions to the confidentiality requirement are also not sufficient to establish narrow tailoring. There is no dispute that Ms. Peck's proposed alternative of allowing non-identifying disclosures by private parties narrows the confidentiality protections of Section 307(4), even when accounting for the exceptions. Likewise, the fact that forty-eight other states have laws similar or identical to Section 307, without any explanation of why those laws are written that way, does not persuasively support a conclusion that allowing non-identifying disclosures would be an unworkable accommodation to Colorado's compelling interests.[14]

---

[14] Tennessee, the outlier state, makes confidential only information that "directly or indirectly identif[ies] a child or family receiving services from the department or that identify the person who made a report of harm." Tenn. Code. Ann. § 37-5-107(a). This statute's existence undermines Defendants' argument that Section 307(4) is narrowly tailored, especially in the absence of any indication that Tennessee has lost CAPTA funding as a result of its narrower statute.

In a final effort to convince us that Section 307(4) is narrowly tailored, Defendants emphasize Section 307's relationship with CAPTA, because they believe that continued enforcement of Section 307 in its entirety is necessary for Colorado to receive federal funds for its child protection system. However, that does not resolve the question of whether Section 307(4) is narrowly tailored, either. It is no excuse for a state that is violating the constitutional rights of its citizens to say "the federal government is paying us to do it." And in any event, Defendants have produced no affirmative evidence that the federal government would in fact withhold CAPTA funding were Section 307(4) to be taken off the books or narrowed to allow private parties to disclose non-identifying information from child abuse records. To the contrary, it appears to us that Colorado qualified for CAPTA funding before Section 307(4) was enacted in its current form in 2003.

Thus, Defendants have failed to disprove that a narrower version of Section 307, prohibiting and punishing only disclosures of identifying information from child abuse reports, would adequately serve Colorado's compelling interest. Because there is a feasible and less restrictive alternative, Section 307(4) is not narrowly tailored to the state's compelling interest, so is facially unconstitutional and void.

## III.    Severability

The district court held, erroneously, that Section 307(1)(c) and Section 307(4) covered the same speech and were both unconstitutional. As a result, the court did not have occasion to address below whether Section 307(4) could be severed from the rest of the statute, leaving Section 307(1)'s penalty—which we find to be

narrower, reaching only disclosures of <u>identifying</u> information from child abuse reports—intact. <u>See generally</u> Colo. Rev. Stat. § 2-4-204 (imposing rules for severing unconstitutional provisions of Colorado statutes); <u>Seila Law LLC v. Consumer Fin. Prot. Bureau</u>, 140 S. Ct. 2183, 2208–09 (2020) (discussing federal severability rules). The parties also did not provide any briefing on severability, as they apparently assumed that the two provisions would have the same scope. Because we have held that only Section 307(4) is unconstitutional, whereas Section 307(1) was not properly challenged by Ms. Peck, we order a limited remand to allow the district court to determine the severability of Section 307(4) in the first instance.

## CONCLUSION

Based on the foregoing, we AFFIRM in part, striking down Section 307(4) as unconstitutional; REVERSE in part, finding that Ms. Peck has not stated a valid challenge to Section 307(1) and leaving that provision in effect; and REMAND for the district court to assess whether the invalid Section 307(4) is severable from the rest of the statute.