**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

TERRI E. BAKER,

     Plaintiff - Appellant,

v.

USD 229 BLUE VALLEY; LEE A.
NORMAN; DEREK SCHMIDT; LAURA
KELLY,

     Defendants - Appellees.

No. 20-3054

———————————————————

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:19-CV-02480-HLT-JPO)**
———————————————————

Linus L. Baker, Stilwell, Kansas for the Plaintiff – Appellant.

Stephanie Lovett-Bowman, (W. Joseph Hatley, Angus W. Dwyer, with her on the brief),
Spencer Fane LLP, Kansas City, Missouri, for USD 229 Blue Valley, Defendant –
Appellee.

Arthur S. Chalmers, Assistant Attorney General, (Derek Schmidt, Attorney General, with
him on the brief), Topeka, Kansas, for Lee A. Norman, Derek Schmidt, and Laura Kelly,
Defendants – Appellees.
———————————————————

Before **MATHESON**, **McHUGH**, and **EID**, Circuit Judges.
———————————————————

**MATHESON**, Circuit Judge.
———————————————————

Terri Baker appeals the dismissal of this putative class action for lack of standing. She sued on behalf of herself and her son, S.F.B., to challenge Kansas laws and school district policies that (1) require children to be vaccinated to attend school and participate in child care programs, and (2) provide a religious exemption from these requirements. She claims these immunization laws and policies violate various federal and state constitutional provisions and statutes.

Ms. Baker named as defendants the Blue Valley Unified School District No. 229 ("District"), where S.F.B. attended preschool during the 2018-2019 and 2019-2020 school years, and three Kansas officials in their official capacities: Laura Kelly, Governor of Kansas; Derek Schmidt, Kansas Attorney General; and Lee Norman, Secretary of the Kansas Department of Health and Environment ("KDHE") (collectively, "Kansas Officials"). The KDHE is responsible for implementing and enforcing immunization laws, and it licenses school programs, child care facilities, and preschools.

The District and Kansas Officials (collectively, "Appellees") moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court granted these motions and dismissed this action without prejudice, holding that Ms. Baker had not satisfied the injury-in-fact requirement to have standing to sue under Article III of the Constitution.

On appeal, Ms. Baker argues that she and S.F.B. have standing because the immunization requirements and religious exemptions injure them in two ways.

First, she asserts the District misapplied Kansas law when it granted a religious exemption for S.F.B. to attend preschool despite being unvaccinated. She contends her

2

fear that the District will revoke S.F.B.'s religious exemption is an injury in fact that establishes standing.

Second, Ms. Baker "would like the option" of placing S.F.B. in a non-accredited private school (i.e., home school),[1] school programs, or licensed child care. App. at 180. She contends that Kansas law inhibits her from exercising these "options" and causes an injury in fact because she would be unable to secure a religious exemption for S.F.B. if she tried.

Exercising appellate jurisdiction under 28 U.S.C. § 1291, we reject these arguments and affirm.

## I. BACKGROUND

### A. *Kansas Laws and District Policies*

#### 1. Kansas Vaccination Laws

Kansas law requires children in schools and child care facilities to be vaccinated unless a medical exemption or a religious exemption applies. Ms. Baker's claims concern the religious exemption. The school facility religious exemption and the child care facility religious exemption differ slightly.

First, Kan. Stat. § 72-6262 requires, "In each school year, every pupil enrolling or enrolled in any school for the first time in this state, and each child enrolling or enrolled for the first time in a preschool or day care program operated by a school, . . . prior to

---

[1] The KDHE treats home schools as "nonaccredited private schools" that are subject to vaccination requirements. *See* Kan. Stat. §§ 72-4345 to 72-4347.

3

admission to and attendance at school . . . shall present to the appropriate school board certification" that the pupil has been vaccinated. Kan. Stat. § 72-6262(a). To qualify for a religious exemption, a pupil must submit "a written statement signed by one parent or guardian that *the child* is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations." *Id.* § 72-6262(b)(2) (emphasis added). A school board may deny enrollment to a pupil who fails to comply with Kan. Stat. § 72-6262. *See id.* § 72-6265(a).

Second, Kan. Stat. § 65-508 requires children in child care facilities to be vaccinated. The person who manages a child care facility must maintain immunization records. A religious exemption may be made if the person managing a child care facility "obtain[s] . . . a written statement signed by a parent or guardian that *the parent or guardian* is an adherent of a religious denomination whose teachings are opposed to immunizations." Kan. Stat. §§ 65-508(h), 65-508(h)(2) (emphasis added).

2. **District Policies**

Ms. Baker also appears to challenge two District policies that implement Kansas law. Blue Valley School Board Policy 2700 states that "[p]arents may object to mandatory vaccinations due to religious beliefs." App. at 74. Policy 3113.2 states that "Kansas law provides the following alternatives to immunization: . . . a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations." *Id.* at 46.

B. *Allegations in the First Amended Complaint*

4

The first amended complaint alleged as follows. Ms. Baker "has long been of the Christian faith." App. at 177. She uses "holistic and dietary remedies" for her health and has taught her children "her understanding of Biblical holistic dietary and medical treatment." *Id.* at 177. She holds "sincere religious convictions" about vaccine risks, the use of vaccines "using cell lines from tissue harvested from abortions," and the use of vaccines containing gelatin. *Id.* She wishes to raise S.F.B. according to her "spiritual values." *Id.* at 182. She also believes that S.F.B., at his current age and due to a disability, is incapable of forming religious beliefs, communicating them, or adhering to a religious denomination.

S.F.B. has never been vaccinated. He thus cannot attend school unless he receives a religious or medical exemption. Before the 2018-2019 school year, Ms. Baker and Linus Baker (collectively, the "Bakers"), submitted the following statement to the District to claim a school religious exemption for S.F.B.:

> In response to our inquiry about an immunization exemption for [S.F.B.] in order to attend [elementary school], you directed us to write a letter stating *it is against our religion*. [Ms. Baker] and I make that statement in this letter. We also acknowledge that the school nurse has a policy that if there is an outbreak of a vaccine-preventable disease, that [S.F.B.] will not be permitted to attend school until 21 days after the last case of outbreak.

App. at 185 (first alteration in original) (emphasis added).

Although the Bakers did not expressly state that S.F.B. was an adherent of a religious denomination under Kan. Stat. § 72-6262(b)(2), the District accepted the

5

Bakers' statement and granted a school religious exemption for S.F.B. S.F.B. remains unvaccinated and has since attended a preschool in the District without incident.

The amended complaint alleged that because the Bakers' statement to the District did not expressly state that S.F.B. was an adherent of a religious denomination, the statement was deficient under Kan. Stat. § 72-6262(b)(2). She therefore contended the District erred in granting S.F.B. a religious exemption, and she fears the District will revoke it.

Also, Ms. Baker "would like the option" of "enrolling S.F.B. in a non-accredited private school" (i.e., a home school), "school programs," and/or "licensed child care." App. at 180. She anticipated a denial of a religious exemption under Kansas law if she tried to enroll S.F.B. in one of those options.

Ms. Baker's first amended complaint listed 18 counts alleging violations of various federal and state constitutional provisions and statutes, including claims under the First Amendment Establishment Clause and the Fourteenth Amendment Equal Protection Clause. Concurrently with filing her complaint, Ms. Baker moved for a preliminary and/or permanent injunction.

## C. *Procedural History*

The District and the Kansas Officials filed motions to dismiss the complaint. In support of its motion, the District submitted (1) a declaration by Dr. Mark Schmidt, the District's Assistant Superintendent of Special Education who oversees the District's health services department ("Schmidt Declaration"); and (2) a 2012 opinion by the Kansas Attorney General interpreting the school religious exemption ("Kansas AG

6

Opinion"). In support of their motion, the Kansas Officials submitted a declaration by Ashley Goss, the KDHE's Deputy Secretary for Public Health, who oversees vaccination requirements for child care facilities ("Goss Declaration").

While these motions were pending, Ms. Baker, with leave from the court, filed a first amended complaint that added class action allegations. She then moved for certification of an injunctive-relief-only class under Federal Rule of Civil Procedure 23(b)(2).

The district court addressed the motions in a single order. It found that Ms. Baker had not demonstrated an injury in fact and thus lacked Article III standing. The court granted the motions to dismiss, dismissed the action without prejudice, and denied the other motions as moot. Ms. Baker timely appealed.

## II. DISCUSSION

We affirm the district court's decision dismissing Ms. Baker's action without prejudice because Ms. Baker did not demonstrate an injury in fact that supports Article III standing. After setting forth applicable legal standards, we examine Ms. Baker's standing theories in two sections.

First, we evaluate Ms. Baker's injury argument that the District may revoke S.F.B.'s religious exemption because Kansas law compels that result. We find that Ms. Baker has not shown a concrete, imminent, and non-speculative injury in fact.

Second, we consider Ms. Baker's contention that Kansas law inhibits her from exercising certain "options" for S.F.B. including home schooling and child care. We

7

reject this theory because Ms. Baker alleges only a "some day" intention to exercise these options that is insufficient to demonstrate an injury in fact.

## A. *Legal Standards*

### 1. Standard of Review

We review de novo a dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Chance v. Zinke*, 898 F.3d 1025, 1028 (10th Cir. 2018) (citing *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008)). We review any findings of jurisdictional facts for clear error. *Ingram v. Faruque*, 728 F.3d 1239, 1243 (10th Cir. 2013) (citing *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1175 (10th Cir. 2010)).

### 2. Article III Injury in Fact

Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies." U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III standing requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

8

imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "An allegation of future injury

may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial"

risk that the harm will occur.'" *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper*,

568 U.S. at 409, 414 n.5).

3. **Federal Rule of Civil Procedure 12(b)(1)—Facial and Factual Jurisdictional Attacks**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a

claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack. A

facial attack assumes the allegations in the complaint are true and argues they fail to

establish jurisdiction. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th

Cir. 2015) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). A factual

attack goes beyond the allegations in the complaint and adduces evidence to contest

jurisdiction. *Id*. (citing *Holt*, 46 F.3d at 1002).

When a defendant brings a factual attack, a district court has "wide discretion to

allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed

jurisdictional facts." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir.

2001) (quoting *Holt*, 46 F.3d at 1003). The court's exercise of such discretion does not

convert a Rule 12(b)(1) motion into a summary judgment motion unless "resolution of

the jurisdictional question is intertwined with the merits." *Holt*, 46 F.3d at 1003 (citing

*Wheeler v. Hurdman*, 825 F.2d 257, 259 & n.5 (10th Cir. 1987); *Redmon v. United*

*States*, 934 F.2d 1151, 1155 (10th Cir. 1991)).

9

B. *Analysis*

Ms. Baker contends she and S.F.B. have suffered an injury in fact because: (1) the District may revoke S.F.B.'s religious exemption; (2) Kansas law inhibits Ms. Baker from exercising certain "options" for S.F.B. including home schooling and child care; and (3) Establishment Clause standing and Equal Protection Clause "opportunity injury" case law confers standing.

The district court's order dismissing this action was unclear as to whether its decision rested on a facial or factual standing analysis. We find that Ms. Baker's first amended complaint is facially deficient. The uncontested evidence submitted by the District and Kansas Officials reinforces our conclusion.

1. **Standing Injury Based on Possible Revocation of S.F.B.'s Religious Exemption**

a. *Additional Legal Background*

When a plaintiff alleges injury from the potential enforcement of a law or regulation, courts find an injury in fact only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159. "Specifically, . . . a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

A credible threat is "well-founded," *id.* (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)), and "not 'imaginary or wholly speculative,'" *id.* (quoting *Babbitt*, 442 U.S. at 298). "The mere presence on the statute books of an

unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (citing *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)).

    b. *Analysis*

Ms. Baker has not shown an injury in fact based on her concern that the District might revoke S.F.B.'s school religious exemption.

Ms. Baker's unusual standing theory falls outside any recognized notion of injury based on the potential enforcement of a law. She argues the District misapplied Kansas law in granting the religious exemption to S.F.B. in response to the Bakers' statement. She asserts that if the District would apply the law correctly, it would revoke the religious exemption, injuring her and S.F.B. From this she contends there is a credible injury in fact. She seems to argue the exemption was too generous to S.F.B. and will not last long, but she alleges no facts to suggest it will be revoked, and she cites no cases that support her novel theory. We will nonetheless analyze her arguments with the understanding she is seeking pre-enforcement review.

The first amended complaint's timeline of events fails to establish a credible and imminent risk of revocation. Before the 2018-2019 school year, the District evaluated whether the Bakers' religious-exemption statement was sufficient. The District granted an exemption, and S.F.B. attended preschool. In short, Ms. Baker's allegations show that the District gave her and S.F.B. everything she wanted, hardly an injury in fact.

11

The District's evidence reinforces this conclusion. Dr. Schmidt, the District's Assistant Superintendent of Special Education, declared that the District "regards [the Bakers'] letter as a sufficient statement of religious objection to exempt S.F.B. from vaccination requirements under current Kansas law and district policy." Suppl. App. at 142. Dr. Schmidt also declared that the District does not plan to change its position.[2] We have found such "assurances" from a government official sufficient to defeat standing. *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (quoting *Winsness*, 433 F.3d at 733). Likewise, the Kansas AG Opinion suggests that since at least 2012, the Kansas Attorney General has taken a broad view as to what sort of statement a parent can submit to receive a religious exemption for a child. *See* App. at 54 ("[Kan. Stat. § 72-6262] does not require bona fide membership in a religious organization."). Thus, the Schmidt Declaration and the Kansas AG Opinion underscore Ms. Baker's failure to show an injury in fact.

Ms. Baker's two key arguments to the contrary are unpersuasive. First, her reliance on cases upholding standing to challenge statutes before they are enforced is misplaced. *See* Aplt. Br. at 24-26, 31 (citing, among other cases, *Cressman v. Thompson*, 798 F.3d 938 (10th Cir. 2015), and *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012)). Our pre-enforcement standing case law requires a plaintiff to show a

---

[2] Ms. Baker argues that Dr. Schmidt is not qualified to opine on these matters and that his declaration was prepared to defend against Ms. Baker's suit. But Dr. Schmidt, as the official overseeing the District's health services department, is well-positioned to address these matters.

12

credible and imminent threat of enforcement to have standing, which Ms. Baker has not done here.[3] *See Winsness*, 433 F.3d at 732 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. at 560; *D.L.S.*, 374 F.3d at 975). Even worse for Ms. Baker, the pre-enforcement cases do not apply because she has not alleged a pre-enforcement claim. The Bakers submitted a religious-exemption statement, the District decided not to enforce the vaccination requirement against S.F.B., and it instead granted him an exemption. Ms. Baker alleges no facts to suggest the District will revisit this decision, and Dr. Schmidt has declared that it will not.[4]

Second, as noted above, Ms. Baker argues that the District's decision to grant a religious exemption to S.F.B. was improper under Kansas law, and therefore the District may revoke S.F.B.'s religious exemption, causing injury in fact. But this argument piles conjecture upon contingency. Ms. Baker alleges no facts to suggest the District will reconsider how it interprets and applies Kansas law. She further alleges no facts to suggest the District, if it revises its interpretation, would deny an exemption to S.F.B. Ms. Baker seemingly thinks she should have standing because the District hypothetically

---

[3] The Tenth Circuit cases Ms. Baker cites require a "credible threat of enforcement" to prove redressability, *Consumer Data Indus. Ass'n*, 678 F.3d at 905, and a "credible threat of prosecution" to show an injury, *Cressman*, 798 F.3d at 948.

[4] Even if pre-enforcement case law applies, a government defendant's credible disavowal of enforcement intent may defeat pre-enforcement standing. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016); *Consumer Data Indus. Ass'n*, 678 F.3d at 904 n.1.

could change its mind about letting S.F.B. attend school. She has not cited any case law recognizing an injury in fact on such a basis.[5]

Our recent decision in *Kansas Natural Resource Coalition v. U.S. Department of Interior*, 971 F.3d 1222 (10th Cir. 2020), is instructive. We held that a plaintiff's "lack of confidence" about the validity of a regulation, absent other facts suggesting imminent harm, did not support standing. *Id.* at 1232. Ms. Baker's theory of injury in fact is even more tenuous. Her "lack of confidence" in S.F.B.'s school religious exemption is unwarranted given the District's course of conduct in granting it.

For these reasons, Ms. Baker has not demonstrated an injury in fact associated with the possibility that the District might revoke S.F.B.'s religious exemption.

### 2. Standing Injury Based on Ms. Baker's Desire to Exercise Certain "Options" for S.F.B.'s Schooling or Care

Ms. Baker's desire to exercise certain "options" for S.F.B.'s home schooling or care likewise does not support an injury in fact. She alleges:

> [Ms. Baker] would like the option of enrolling S.F.B. in a
> non-accredited private school. This may include

---

[5] For similar reasons, we reject Ms. Baker's argument that we must consider her arguments about how to interpret Kansas law because they are "inextricably intertwined" with the standing question. They are not. We find standing intertwined with the merits when we cannot resolve a jurisdictional question without addressing the merits of a substantive claim. *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005) (citing *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)); *see Day v. Bond*, 500 F.3d 1127, 1136-37 (10th Cir. 2007) (collecting cases and discussing this doctrine). Here, we need not address the merits of Ms. Baker's claims to determine whether she has shown an injury in fact. Rather, we can ask if Ms. Baker has pleaded facts or adduced evidence showing a credible and imminent threat that the District will revoke S.F.B.'s religious exemption. She has not.

14

> homeschooling S.F.B. She would also like the option of
> having S.F.B. participate in school programs and licensed
> child care.

App. at 180.

    a. *Additional Legal Background*

The Supreme Court has instructed that "'some day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. at 564. When an injury in fact depends on a plaintiff's future conduct, a plaintiff must describe "concrete plans," *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. at 564), and not merely a "vague desire," *id.*, to undertake that conduct.

In *Lujan v. Defenders of Wildlife*, the Supreme Court examined affidavits from Joyce Kelly and Amy Skilbred. Each tried to establish an injury in fact based on alleged threats to overseas endangered or threatened species from changes to a federal regulation. 504 U.S. at 563. Ms. Kelly reported she had visited Egypt to observe the endangered Nile crocodile. Ms. Skilbred stated she had visited Sri Lanka to observe the endangered Asian elephant and leopard. Both said they intended to return to these countries to observe the endangered animals.

The Court held that the affidavits were insufficient to "show[] how damage to the species will produce imminent injury" to Ms. Kelly and Ms. Skilbred. *Id.* at 564 (quotations omitted). The affiants' "profession of an inten[t] to return to the places they had visited before . . . [was] simply not enough," because they were mere "some day intentions." *Id.* (first alteration in original) (quotations omitted). "That the women had

15

[previously] visited the areas . . . prove[d] nothing." *Id.* (quotations omitted). They lacked "actual or imminent injury." *Id.* (quotations omitted).

   b. *Analysis*

As in *Lujan v. Defenders of Wildlife*, Ms. Baker's desire to have "options" for S.F.B. is a "some day" intention that does not establish "actual or imminent injury." She does not allege which "options" she will choose, when she plans to exercise them, what concrete plans she has to pursue them, and what facts indicate an imminent threat of injury. Indeed, based on their inaction, the Bakers seem content to keep S.F.B. at his current school. Ms. Baker's allegations about her desire to exercise "options" for S.F.B.'s home schooling and care are therefore facially deficient to allege an injury in fact.

The Appellees' evidence again reinforces our conclusion. Ms. Goss, the KDHE's Deputy Secretary for Public Health, oversees vaccination requirements for child care facilities. She declared that if the Bakers claimed a child care facility religious exemption using a statement substantially identical to the one they submitted to the District, the KDHE would regard that statement as sufficient to warrant a religious exemption. And the Kansas AG Opinion—as noted—suggests that the Kansas Attorney General has long taken a broad view as to what sort of statement a parent can submit to claim a religious exemption for a child. Both the Goss Declaration and the Kansas AG Opinion suggest that Ms. Baker would not be barred from these "options."

Ms. Baker's arguments to the contrary are not persuasive. First, she argues that requiring her to take further steps toward exercising these "options" would be futile

16

because S.F.B. is already "automatically disqualified" from them. Aplt. Reply Br. at 22. But Ms. Baker has not alleged or demonstrated with evidence that taking further steps would be futile. Her allegations do not show that a Kansas child care facility would not grant a religious exemption for S.F.B.

Second, Ms. Baker once again invokes our decisions on pre-enforcement challenges. Her argument fails because "some day" intentions are insufficient to show the credible and imminent threat necessary for standing. She has not identified any imminent enforcement and cannot do so because she has not alleged any attempt or concrete plans to enroll S.F.B. in a non-accredited private school or a child care facility.

For these reasons, Ms. Baker has not demonstrated an injury in fact associated with her desire to exercise certain "options" for S.F.B.'s home schooling or care.[6]

---

[6] Ms. Baker also argues on appeal that she has standing because "Kansas is not treating her or [S.F.B.] equally to other parents and students exercising religion." Aplt. Br. at 45. She contends KDHE policy "erects disqualifying obstacles" for S.F.B. to receive the benefits of school and child care. *Id.* at 46. She further suggests that the Supreme Court has "relaxed standing requirements" in equal protection cases involving opportunity injuries. *See id.* (citing Equal Protection Clause opportunity injury case law without expressly invoking the concept of opportunity injuries). We reject this argument. Not only does the district court record show that Ms. Baker forfeited this argument by not presenting it there, but Ms. Baker still has not alleged facts showing an injury in fact.

To the extent Ms. Baker relies on Establishment Clause case law on standing, *see* Aplt. Br. at 40 (citing *Awad v. Ziriax*, 670 F.3d 1111, 1122 (10th Cir. 2012)), she also did not make this argument in district court, inadequately briefs it in this court, and has not alleged facts to "identify a[] personal injury suffered by [her or S.F.B.] *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Awad*, 670 F.3d at 1121 (first alteration in original) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 485 (1982)).

### III.    **CONCLUSION**

We affirm the district court's judgment.