FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

**March 29, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

GRACE BIBLE FELLOWSHIP; JOEY
RHOADS,

    Plaintiffs - Appellants,

v.

JARED POLIS, in his official capacity as
Governor, State of Colorado; JILL
HUNSAKER RYAN, in her official
capacity as Executive Director, Colorado
Department of Health and Environment;
WELD COUNTY DISTRICT
ATTORNEY, in his official capacity,

    Defendants - Appellees.

No. 23-1148
(D.C. No. 1:20-CV-02362-DDD-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Grace Bible Fellowship and its pastor, Joey Rhoads, appeal the district court's

order dismissing their amended complaint.[1] Because we agree that plaintiffs fail to

demonstrate the injury required for constitutional standing as to most of their claims,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] Rhoads is the only remaining plaintiff from the original complaint: the district court allowed Grace Bible Fellowship to substitute for Community Baptist Church, and the remaining plaintiffs withdrew. *See* Fed. R. Civ. P. 25(c).

that one of their claims is moot, and that they fail to state their remaining claim, we affirm.

## Background

Plaintiffs filed their original complaint in August 2020, challenging various COVID-19 restrictions imposed by Colorado and the federal government's award of COVID-19 relief funds to Colorado. Plaintiffs also moved to preliminarily enjoin Colorado from enforcing its executive and public-health orders and to prohibit various federal agencies from approving or providing any future monetary assistance to the state. The district court largely denied plaintiffs' motion, ruling that they failed to make the required strong showing of a substantial likelihood of success on the merits. *See Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 822–23 (D. Colo. 2020).[2]

Plaintiffs appealed, but by the time the case reached oral argument in November 2021, Colorado no longer imposed any COVID-19 restrictions on plaintiffs, so we dismissed most of their claims as moot. *See Cmty. Baptist Church v. Polis*, No. 20-1391, 2022 WL 200661, at *1, 7 (10th Cir. Jan. 24, 2022) (unpublished). And on plaintiffs' facial free-exercise challenge to the Colorado Disaster Emergency Act (CDEA), Colo. Rev. Stat. §§ 24-33.5-701 to 24-33.5-717,

---

[2] The district court did issue a relatively narrow preliminary injunction against Colorado's numerical occupancy limitation and masking requirement for worship services. *See Denver Bible Church*, 494 F. Supp. 3d at 843–44. Colorado initially appealed that order but then voluntarily dismissed its appeal. *See Denver Bible Church v. Polis*, No. 20-1377 (10th Cir. Dec. 23, 2020) (order granting motion to voluntarily dismiss appeal).

we affirmed the denial of a preliminary injunction because plaintiffs were unlikely to succeed on the merits. *Id.* at *7.

On remand, the district court dismissed the moot claims, and plaintiffs filed an amended complaint challenging "the State's authority to impose any sort of public-health restrictions . . . on houses of worship[] and . . . assert[ing] that certain state statutes that authorize the issuance of such public-health orders impermissibly treat secular institutions more favorably than religious ones." App. vol. 3, 645. The amended complaint listed 14 claims, alleging that both the CDEA and certain public-health statutes that govern the CDPHE, Colo. Rev. Stat. §§ 25-1.5-101 and 25-1.5-102, (1) are unconstitutionally overbroad and violate plaintiffs' free-speech rights both facially and as applied; (2) are unconstitutionally vague both facially and as applied; and (3) violate equal protection both facially and as applied. Plaintiffs also reasserted two claims from their original complaint, contending that the CDEA violates their free-exercise rights both facially and as applied. For relief, plaintiffs requested a "declaratory judgment and permanent injunctive relief . . . declaring [their] rights under [the] CDEA and the [p]ublic[-h]ealth [s]tatutes and prohibiting [d]efendants . . . from issuing, enforcing[,] or threatening to enforce . . . any executive orders and/or public[-]health orders issued" under those laws. App. vol. 1, 36.

Defendants moved to dismiss the claims against them for lack of subject-matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that plaintiffs lacked standing, that their claims were moot,

3

and that they failed to state a claim. In support, defendants submitted affidavits and evidence demonstrating that no executive or public-health orders issued under the challenged statutes were currently in effect.

The district court granted defendants' motions and dismissed the amended complaint, concluding that plaintiffs lacked standing to bring their newly asserted claims because plaintiffs failed to allege the required injury. As to the reasserted claims, the district found that the as-applied CDEA free-exercise claim was moot, as we had previously ruled, and that plaintiffs' facial CDEA free-exercise claim failed to state a claim upon which relief could be granted.[3]

Plaintiffs now appeal the dismissal of their claims for prospective declaratory relief.[4]

**Analysis**

Plaintiffs argue that the district court erred in dismissing their claims. Our review is de novo, except that we review any jurisdictional findings of fact for clear error. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (noting de novo review of Rule 12(b)(1) dismissal and clear-error review of jurisdictional fact findings); *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023) (noting de novo review of Rule 12(b)(6) dismissal); *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023) (noting de novo review of standing and mootness).

---

[3] The district court also granted in part plaintiffs' motion for interim attorney fees based on their success in obtaining partial, preliminary injunctive relief.

[4] Plaintiffs do not appeal the attorney-fee ruling or the dismissal of their claims for a permanent injunction.

As an initial matter, plaintiffs argue that the district court procedurally erred by considering evidence outside the complaint when dismissing their newly asserted claims for lack of subject-matter jurisdiction under Rule 12(b)(1). To be sure, defendants factually attacked the district court's subject-matter jurisdiction by submitting evidence showing the absence of any existing executive or public-health orders issued under the challenged statutes. And the district court considered that evidence when ruling that plaintiffs failed to establish any current and ongoing or imminent injury, as required to obtain the requested prospective relief on their newly asserted claims. But it did not err in doing so.

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can take two forms: a facial or a factual attack. *Baker*, 979 F.3d at 872. "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* By contrast, "[a] factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* And when faced with a factual attack on subject-matter jurisdiction, the district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)). The district court's "exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary[-]judgment motion unless 'resolution of the jurisdictional question is intertwined with the merits,'" which is not the case here. *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S.

5

425 (2001)). Additionally, although plaintiffs suggest in passing that the district court further erred by failing to conduct a hearing, they never asked for a hearing below and do not explain on appeal how failing to conduct one here was an abuse of discretion. *See id.* (noting "wide discretion" to allow evidentiary hearing on jurisdictional facts). We therefore reject plaintiffs' procedural challenge to the district court's jurisdictional rulings.

Turning to the merits of the jurisdictional matters, Article III of the Constitution confines the federal judicial power to deciding "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. This constitutional limitation requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). "The doctrines of standing and mootness aim to ensure federal courts stay within Article III's bounds throughout the litigation." *Rio Grande*, 57 F.4th at 1159–60. To establish Article III standing, a plaintiff must demonstrate "a concrete and particularized injury that is fairly traceable to the challenged conduct[] and is likely to be redressed by a favorable judicial decision." *Carney*, 592 U.S. at 58 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). And a case becomes moot "[w]hen it becomes impossible for a court to grant effective relief." *Rio Grande*, 57 F.4th at 1165 (quoting *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009)).

Like the district court, we consider plaintiffs' claims in two groups, beginning with the claims asserted for the first time in the amended complaint. The district

6

court found that plaintiffs lacked standing as to these new claims based on their failure to allege the injury component. An injury is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury[-]in[-]fact.'"[5] *Carney*, 592 U.S. at 58.

Plaintiffs first argue, as they did below, that they "were injured by complying with unconstitutional orders or violating them at the risk of prosecution." Aplt. Br. 30. Stated differently, plaintiffs say that they "suffered [an] actual injury-in-fact by enduring the State's months-long invasion of the [c]hurch's First and Fourteenth Amendment interests" via the orders imposing COVID-19 restrictions on them. Rep. Br. 3. But as the district court explained, that alleged injury has come and gone: the complained-of orders imposing COVID-19 restrictions on plaintiffs are no longer in force. This is critical because plaintiffs seek prospective—not retrospective—relief.

---

[5] Standing is typically assessed as of the date the complaint is filed. *See Rio Grande*, 57 F.4th at 1161. The district court concluded that the appropriate point of reference for the newly asserted claims is the date that plaintiffs filed their amended complaint. Plaintiffs do not challenge that conclusion, so we accept it for purposes of this appeal. *See Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1322 (10th Cir. 2022) (explaining that it is plaintiffs' burden to establish jurisdiction and "a federal court is not obliged 'to conjure up possible theories' to support subject-matter jurisdiction" (quoting *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011))).

*See Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) ("Plaintiffs have the burden to demonstrate standing for each form of relief sought." (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006))). That is, plaintiffs do not seek relief for their asserted past injuries; instead, they ask for a declaration about the legality of certain statutes going forward. *See PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002) (explaining that declaratory relief is retrospective only "to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred"). And even though "plaintiff[s] may present evidence of a past injury to establish standing for *retrospective* relief, [they] must demonstrate a continuing injury to establish standing for *prospective* relief."[6] *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (emphases added); *see also PeTA*, 298 F.3d at 1202–03 (noting that plaintiffs may "lose their standing for claims for prospective relief" if, during litigation, "an event occurs that heals the injury"). Thus, plaintiffs' alleged past injuries do not "demonstrate a continuing injury to establish standing for prospective relief," which is the only kind of relief plaintiffs seek.[7] *Jordan*, 654 F.3d

---

[6] Plaintiffs purport to challenge this legal proposition, contending that a claim seeking prospective declaratory relief can be based on a past injury. But we have expressly held to the contrary, explaining that even though "a complaint for nominal damages [for a past injury] could satisfy Article III's case[-]or[-]controversy requirements, . . . a functionally identical claim for declaratory relief will not." *Utah Animal Rts. Coal. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir. 2004).

[7] Plaintiffs briefly assert that their past injuries resulted in "a continuing injury due to the fact [that] some church members never returned after the lockdown." Aplt. Br. 27. But even assuming that the loss of church members could constitute a continuing injury (a proposition that plaintiffs fail to develop or provide authority

at 1019.

To be sure, a slightly lower threshold applies when assessing injury for pre-enforcement First Amendment claims. *See Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022). Under this lower standard, a plaintiff must allege an intention to engage in constitutionally protected conduct proscribed by statute and a credible threat of future prosecution, plus ongoing injury resulting from this chilling effect. *See id.* But here, as the district court concluded, "the amended complaint contains no plausible allegations that . . . plaintiffs are avoiding engaging in any activity they have previously engaged in based on an objectively justified fear of future enforcement." App. vol. 3, 656. Nor have plaintiffs "adequately alleged that they are subject to a credible threat of enforcement of any public-health restrictions that may proscribe protected religious or expressive conduct in the future." *Id.* at 654. And there is nothing in the challenged statutes themselves "that prohibits or restricts . . . plaintiffs from engaging in religious activities." *Id.* at 656.

Plaintiffs do not dispute these propositions on appeal. In fact, they seemingly disavow any reliance on imminent injuries and disclaim any pre-enforcement First Amendment challenge, stating that their amended complaint "is not a 'pre[-]enforcement action.'" Aplt. Br. 30. In other words, plaintiffs do not seek to establish standing under the lower First Amendment threshold and instead stake

---

for), plaintiffs do not allege that such loss is traceable to defendants' conduct or that it is likely to be redressed by a favorable judicial decision, as they must to establish standing. *See Carney*, 592 U.S. at 58.

9

standing on their alleged actual injuries, which occurred in the past, are not ongoing, and do not establish standing for the prospective relief they seek.

In sum, that plaintiffs' newly asserted claims challenge various existing state statutes is not enough to confer standing: the "mere presence on the statute books of an unconstitutional statute . . . does not entitle anyone to sue." *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006). This is true even for plaintiffs' newly asserted facial challenges because we have made clear that "[a] plaintiff bringing a facial challenge to a statute . . . must . . . establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003). Plaintiffs have not done so here, so they lack standing for such claims.

We next consider plaintiffs' reasserted claims challenging the CDEA on free-exercise grounds. For the as-applied claim, we agree with the district court that such claim is moot, as we previously held. *See Cmty. Baptist Church*, 2022 WL 200661, at *6–7.

For the facial claim, we agree with the district court that plaintiffs fail to state a claim. In so holding, the district court determined (as we suggested in deciding plaintiffs' prior appeal, *see id.* at *8–9) that the CDEA was neutral, generally applicable, and survived the resulting rational-basis review. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) (explaining rational-basis review of neutral, generally applicable laws, as compared to strict-scrutiny review of laws or policies that are not neutral or generally

10

applicable).

Plaintiffs dispute only the general applicability of the CDEA, relying for support on the Supreme Court's recent ruling in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). But that case doesn't help plaintiffs. There, the Court held that the challenged practice (prohibiting a football coach from leading a prayer on the field after a game) was "neither neutral nor generally applicable" because the defendant school district "sought to restrict [the coach's] actions at least in part because of their religious character." *Kennedy*, 597 U.S. at 526. Such facts sharply contrast with plaintiffs' allegations about the CDEA. As the district court put it, the "amended complaint does not allege that the law is discriminatorily motivated or constitutes an official expression of hostility to religion." App. vol. 3, 651 n.4; *see also Grace United*, 451 F.3d at 649–50 ("A law is neutral so long as its object is something other than the infringement or restriction of religious practices."); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004) (noting that rule motivated by discrimination is not neutral or generally applicable). To be sure, the CDEA contains some limited secular exemptions, but we previously explained why those exemptions were far less broad than plaintiffs would have it. *See Cmty. Baptist Church*, 2022 WL 200661, at *9. And plaintiffs advance no reason to question our prior reasoning. Indeed, although plaintiffs baldly assert on appeal that the CDEA "allow[s them] to be punished for 'personal religious observance,'" Aplt. Br. 36 (quoting *Kennedy*, 597 U.S. at 543), they "have not pointed to any part of the law that . . . prohibits any religious conduct or burdens their religious practice in any way,"

11

App. vol. 3, 651 n.4. We therefore agree with the district court that plaintiffs fail to state a claim that the CDEA facially violates the Free Exercise Clause.

## Conclusion

Plaintiffs' newly asserted claims are not justiciable because plaintiffs fail to show the requisite injury for Article III standing. As for plaintiffs' reasserted free-exercise challenges to the CDEA, their as-applied claim is moot, and they fail to state a facial claim. We thus affirm the district court's order dismissing plaintiffs' amended complaint.

Entered for the Court

Nancy L. Moritz
Circuit Judge