**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

WHALE FAMILY INVESTMENTS, LP;
RANSLEM CAPITAL, L.P.,

     Plaintiffs - Appellants,

v.

CONCORD01, LLC; 1001088 ALBERTA,
INC.; FLIGHT LLC; ST. JOHN'S
HOLDING, LLC; KARRY
WARBURTON; WILLIAM
WARBURTON; CONCORDR01, LLC;
LINNCO34, LLC; VODICKA01, LLC,

    Defendants - Appellees.

No. 24-1011
(D.C. No. 1:23-CV-01059-NYW-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

This appeal presents a dispute between a company's minority shareholders—

plaintiffs Whale Family Investments, LP, and Ranslem Capital, L.P.—and its

majority shareholders—the various defendants. After defendants amended the

company's operating agreement to give the company and its board the power to

forcibly redeem plaintiffs' shares, the board used that power to redeem plaintiffs'

---

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

shares for less than fair market value. Plaintiffs sued for breach of contract, challenging the operating-agreement amendment.

The district court dismissed plaintiffs' lawsuit for lack of jurisdiction, holding that plaintiffs lack Article III standing because their stated injury, premised on forced redemption of their shares at an unjust price, was not fairly traceable to defendants' allegedly improper amendment of the operating agreement. The district court reasoned that defendants had the power to forcibly redeem plaintiffs' shares under the original agreement, such that the amendment did not cause plaintiffs' harm. But plaintiffs' complaint (1) plausibly alleges that the 2011 OA entitled them to fair market value for their units and (2) plausibly attributes the undervaluation of their units to the 2022 OA. We thus conclude plaintiffs have standing and reverse.

**Background**

Plaintiffs allege that in 2011, they invested in nonparty Concord Energy Holdings LLC (the Company), an entity that manages and markets natural gas and crude oil. In exchange for their investment, plaintiffs received membership interests—called "units"—in the Company. Plaintiffs own the majority of class B units. Defendants own the Company's class A units, which account for over 60% of the Company's total voting units.

When plaintiffs invested in 2011, the Company amended its operating agreement (OA) and created the 2011 OA. The 2011 OA had five important features:

1.  It provided class B unit holders a seat on the board of directors.

2. It required class B's approval to amend the 2011 OA "in a manner that would adversely and disproportionately affect" anyone holding class B units. App. vol. 1, 170.

3. It allowed the Company to redeem or repurchase anyone's units so long as it obtained prior written consent from the "[r]equisite [h]olders"—defined as the unit holders "holding in the aggregate at least . . . 60%[] of the outstanding" class A and class B units. *Id.* at 156.

4. It did not contain any language specifying the terms of a redemption and did not specify a redemption price.

5. It defined fair market value to "mean[], with respect to any asset or equity interest, its fair market value as agreed upon by the [r]equisite [h]olders or, if there is no such agreement, as determined by an independent appraiser mutually agreed upon by the [r]equisite [h]olders." *Id.* at 139.

The Company amended the 2011 OA in 2022, creating the 2022 OA. As relevant here, the 2022 OA did two important things:

1. Added a mandatory redemption clause, which gives the board authority, if approved by the requisite holders, to "cause the Company to redeem all or a portion of such [u]nit [h]older's [u]nits on such terms as the [b]oard determines to be fair and reasonable, including redemption of . . . [c]lass B [u]nits at [b]ook [v]alue."[1] *Id.* at 199.

2. Added to the definition of fair market value to state that in the case of mandatory redemption, "the [f]air [m]arket [v]alue of any asset or equity interest shall be such amount that the [b]oard determines to be fair and reasonable (including an amount at [b]ook [v]alue)." *Id.* at 199–200.

---

[1] The 2022 OA defines "book value" as "the economic book value as determined by the [b]oard consistent with the manner in which the Company has recognized book value in past transactions." App. vol. 1, 183. In contrast, the 2011 OA defined book value as "the asset's adjusted basis for federal[-]income[-]tax purposes, except that [b]ook [v]alues of all assets of the Company may be adjusted to equal their respective [f]air [m]arket [v]alues, in accordance with" specific regulations in certain circumstances. *Id.* at 137; *see also Book Value*, Black's Law Dictionary (12th ed. 2024) ("The value at which an asset is carried on a balance sheet.").

3

In January 2023, shortly after defendants amended the 2011 OA, the Company sent each plaintiff a notice of redemption that relied on the 2022 OA's mandatory redemption clause. The Company demanded redemption of all Whale Family's class B units for $16,134,624.21 and all Ranslem Capital's class B units for $16,049,341.20.

Plaintiffs then filed this action, alleging that these "[r]edemption [p]rices were significantly below the fair market value." *Id.* at 24. They contend that the 2022 OA is invalid and void because (1) the 2011 OA required class B's approval to amend the OA "in a manner that would adversely and disproportionately affect the holders of the [c]lass B [u]nits"; (2) the 2022 amendment did indeed adversely and disproportionately affect class B unit holders; and (3) the board did not seek plaintiffs' approval to amend. *Id.* at 77. According to plaintiffs, the changes introduced in the 2022 OA—adding a mandatory-redemption clause and providing that fair market value does not necessarily apply to a mandatory redemption— removed a safeguard "that would assure that any buy[]out or redemption would occur at a fair value." *Id.* at 21.

Defendants moved to dismiss plaintiffs' claims for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For their Rule 12(b)(1) argument, defendants argued that plaintiffs lacked Article III standing because plaintiffs couldn't trace their injury to defendants' conduct. In support, defendants argued that because they had sufficient power to forcibly redeem plaintiffs' units under the 2011 OA, plaintiffs could not

trace their harm to the 2022 amendment. Plaintiffs responded that the 2022 amendment caused their injury because it created defendants' right to forcibly redeem plaintiffs' units for book value, whereas the 2011 OA called for fair market value.

The district court granted defendants' motion, concluding plaintiffs lacked standing because they did not assert that defendants' conduct caused their injury. The district court explained that plaintiffs did "not meaningfully dispute[ that] the 2011 OA did not specify *any* redemption price." App. vol. 2, 270. And, though plaintiffs asserted that the 2011 OA entitled them to fair market value, the district court pointed out that the 2011 OA "defined 'fair market value' as a number set by the same majority of [u]nit holders required to approve the redemption." *Id.* The district court thus concluded that plaintiffs provided "insufficient factual averments and no legal authority whatsoever for the proposition that [d]efendants' challenged conduct caused their injury here." *Id.* The district court dismissed the case.[2]

Plaintiffs now appeal.

## Analysis

Plaintiffs argue that the district court erred in dismissing their claims for lack of standing. Our review is de novo. *United States v. Colo. Sup. Ct.*, 87 F.3d 1161,

---

[2] Plaintiffs moved to vacate the final judgment under Federal Rule of Civil Procedure 59(e). The district court struck plaintiffs' motion for failing to comply with a local rule that required plaintiffs to confer with opposing counsel before filing the motion. Plaintiffs then moved for reconsideration of this striking, but the district court found no error in its order and denied the motion.

5

1164 (10th Cir. 1996). And because defendants facially attack the court's subject-matter jurisdiction, we "assume[] the allegations in the complaint are true." *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022) (quoting *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020)).[3]

"Article III of the Constitution requires a plaintiff have standing to sue, meaning [the plaintiff] has incurred (or will incur) (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The parties do not dispute, and the district court agreed, that plaintiffs have alleged a redressable injury: the forced redemption and subsequent undervaluation of their class B units. The only issue is whether plaintiffs have alleged that this injury "is fairly traceable to [defendants'] challenged conduct." *Id.* (quoting *Spokeo*, 578 U.S. at 338).

The fairly traceable element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of

---

[3] The district court did not characterize defendants' motion to dismiss as a facial or factual attack, but on appeal, plaintiffs characterize it as a facial attack. Defendants do not contradict this characterization, and their motion is indeed best characterized as a facial attack because the standing arguments do not go beyond the complaint. *See Laufer*, 22 F.4th at 875 ("A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." (quoting *Baker*, 979 F.3d at 872)).

some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). This "causation requirement demands 'something less than the concept of "proximate cause,"'" *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)), meaning it requires less than a "direct relation between the injury asserted and the injurious conduct alleged," *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). "Yet Article III does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id.* At the pleading stage, plaintiffs' burden to show the fairly traceable element of standing "is relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

As an initial matter, plaintiffs insist that standing and its traceability inquiry are rarely proper considerations in a breach-of-contract case and are not a proper consideration here. Plaintiffs emphasize that, "to [their] knowledge, this [c]ourt has never found the 'fairly traceable' element lacking in a run-of-the-mill contract action, such as [this] one." Aplt. Br. 21. But we need not opine on the general propriety of such challenges. "Standing jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." *Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998) (quoting *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992)). And so we confine our analysis to the case before us.

7

Turning to the heart of the appeal, plaintiffs argue the district court erred in concluding that they failed to allege their injury was fairly traceable to the 2022 amendment. We agree. Plaintiffs' complaint plausibly alleges that they were entitled to a fair-market-value redemption price under the 2011 OA and plausibly attributes their undervaluation injury to the 2022 amendment. Specifically, the complaint alleges the 2022 amendment "removed any provision that would assure that any buy[]out or redemption would occur at a fair value." App. vol. 1, 21. It also alleges that "the [r]edemption [p]rices were significantly below the fair market value of [p]laintiffs' [u]nits under standard valuation methodologies."[4] *Id.* at 24. And the complaint alleges that defendants breached the 2011 OA by "[d]emanding redemption of [p]laintiffs' [u]nits at a value that is considerably below fair market value." *Id.* at 26.

To be sure, the district court noted that under the 2011 OA, "fair market value" is "a number set by the same majority of [u]nit holders required to approve the redemption." App. vol. 2, 270. But to the extent that the district court was suggesting that plaintiffs have a traceability problem because the majority unit holders have always had the power to set a redemption price below fair market value, we disagree. There remains a significant difference between redemption under the 2011 OA and

---

[4] Defendants lament that the complaint flips between "fair value" and "fair market value," contending that these terms have different legal meanings under Delaware law. Although plaintiffs' complaint lacks precision, that imprecision doesn't change the outcome here because plaintiffs are entitled to favorable inferences on a motion to dismiss. *See Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024).

redemption under the 2022 OA. Recall that the 2011 OA defines fair market value as the "fair market value as agreed upon by the [r]equisite [h]olders." App. vol. 2, 321. So under the 2011 OA, "fair market value" is just that—fair market value—a term with independent legal significance. *See Value*, Black's Law Dictionary (12th ed. 2024) (defining fair market value as "price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction"). And contrary to the district court's view, "fair market value *as agreed upon* by the [r]equisite [h]olders" does not give the requisite holders free rein to set fair market value at any price they see fit. App. vol. 1, 321 (emphasis added). Instead, the 2011 OA tethers the requisite holders' discretion to the traditional meaning of fair market value.

The 2022 OA, in contrast, explicitly says that the traditional definition of fair market value does not apply to mandatory redemptions and instead empowers the board to set the mandatory redemption price at book value. Thus, though the requisite holders had the power to agree to a fair market value under the 2011 OA, the 2022 OA eliminated the possibility of a redemption at fair market value. And viewing this change in a light most favorable to plaintiffs, the 2022 OA removed an objective measure of the units' value—fair market value—and replaced it with a subjective "book value" set by the board. *Id.* at 183. The complaint thus alleges that the 2011 OA entitled plaintiffs to fair market value for their units.

Next, the complaint plausibly attributes the forced redemption and subsequent undervaluation of plaintiffs' units to the 2022 OA. It alleges defendants amended the

9

OA to "remove [p]laintiffs, their largest class B unit holders, in preparation for the Company's sale, to boost their own profits from such a transaction to the exclusion of [p]laintiffs." *Id.* at 23. What's more, plaintiffs attached their redemption notices to the complaint, and each notice cites the 2022 OA's new mandatory redemption clause as authority for the redemption.[5] Plaintiffs thus have plausibly alleged that the 2022 amendment caused their injury.

This is true even though the 2011 OA does not specify a redemption price. The *omission* of a redemption price in the 2011 OA does not mean that it implicitly *included* the redemption price specified in the later-developed 2022 OA. On the contrary, as discussed above, the complaint plausibly implies that the 2011 OA gave plaintiffs a right to redemption of their shares at fair market value while the 2022 OA gave the Company the power to redeem plaintiffs' units at book value. So it's plausible that without the 2022 amendment, plaintiffs would have been entitled to a higher price for their units. *See Laufer*, 22 F.4th at 875 (explaining that Rule 12(b)(1) "facial attack assumes the allegations in the complaint are true" (quoting *Baker*, 979 F.3d at 872)).

Plaintiffs thus shouldered their "relatively modest" burden, *Bennett*, 520 U.S. at 171, to plausibly allege "a substantial likelihood" that the 2022 OA caused the

---

[5] Although plaintiffs failed to direct the district court's attention to the redemption notices in their briefing below, we consider those notices here because they are attached to the complaint, and we have de novo review.

forced redemption and undervaluation of their units, *Nova Health Sys.*, 416 F.3d at 1156.

## Conclusion

Because the district court erred in concluding that plaintiffs failed to trace their injury to the 2022 OA amendment, we reverse and remand for further proceedings consistent with this decision.[6]

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[6] As a result, we need not consider plaintiffs' other grounds for reversal. We also decline to consider defendants' alternative arguments for affirming under Rule 12(b)(6) because the district court did not reach these arguments. *See Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) (declining to consider argument not addressed by lower court because "we are a court of review, not of first view").